**No. 25-40544**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Darryl George,

Plaintiff - Appellant

v.

Barbers Hill Independent School District; Greg Poole; Lance Murphy; Ryan Rodriguez,

Defendants - Appellees

---

**On Appeal from**
United States District Court for the Southern District of Texas

3:24-CV-12

---

**BRIEF OF APPELLANT DARRYL GEORGE**

SUBMITTED BY:

Allie Rychaan Renee Booker
The Booker Law Firm
1200 Rothwell Street
Houston, Texas 77002

Joseph Kelly Plumbar
Law Office of Joseph K. Plumbar
1200 Rothwell Street
Houston, TX 77002

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th CIR Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Barbers Hill Independent School District | Richard Morris of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Barbers Hill Independent School District | Jonathan Brush of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Barbers Hill Independent School District | Amy Demmler of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Barbers Hill Independent School District | Kyle Stone of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Lance Murphy | Richard Morris of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Lance Murphy | Jonathan Brush of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Lance Murphy | Amy Demmler of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Lance Murphy | Kyle Stone of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Greg Poole | Richard Morris of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Greg Poole | Jonathan Brush of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Greg Poole | Amy Demmler of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Greg Poole | Kyle Stone of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Ryan Rodriguez | Richard Morris of Rogers, Morris & Grover, L.L.P. Houston, TX |

| Ryan Rodriguez | Jonathan Brush of Rogers, Morris & Grover, L.L.P. Houston, TX |
|---|---|
| Ryan Rodriguez | Amy Demmler of Rogers, Morris & Grover, L.L.P. Houston, TX |
| Ryan Rodriguez | Kyle Stone of Rogers, Morris & Grover, L.L.P. Houston, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Darryl George | Joseph Plumbar of Law Office of Joseph K. Plumbar Houston, TX |
| Darryl George | Allie Booker of Booker Law Firm Houston, TX |

/s/Joseph Kelly Plumbar
Attorney of record for Appellant

iv

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument. This appeal presents exceptionally important constitutional questions regarding the proper application of intermediate scrutiny to sex-based grooming codes and the scope of the Texas CROWN Act. The issues are consequential not only for Mr. George, but for students across Texas and within this Circuit who are subject to similar grooming policies.

Oral argument will materially aid the Court. The district court's rulings involved multiple intertwined procedural and substantive errors—improper reconsideration of summary judgment without new evidence, misapplication of Rule 56 burdens, denial of an evidentiary hearing despite disputed facts, and restrictions on discovery that prevented development of the record. The complexity of these issues, combined with the constitutional significance of the sex-based equal protection question, warrants the opportunity for the Court to question counsel directly.

Additionally, this case presents a matter of first impression regarding the enforcement and interpretation of the Texas CROWN Act, which has far-reaching implications for school districts statewide. The statutory and constitutional questions

raised are substantial and will benefit from full oral presentation and clarification of the record.

For these reasons, Appellant submits that oral argument will significantly assist the Court in resolving the important issues presented in this appeal.

**TABLE OF CONTENTS**

Contents                                                                    Page(s)

CERTIFICATE OF INTERESTED PERSONS ............................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................................. v

TABLE OF CONTENTS .......................................................................... vii

TABLE OF AUTHORITIES ...................................................................... 1

JURISDICTIONAL STATEMENT .............................................................. 3

STATEMENT OF THE ISSUES ................................................................. 4

STATEMENT OF THE CASE ................................................................... 7

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENT ........................................................................................ 13

    **I.   The District Court Abused Its Discretion by Conflating Sanctions With Merits Disposition** ................................................................ 13

    **II. The District Court Improperly Reconsidered and Reversed Its Prior Denial of Summary Judgment Without Procedural Basis and by Shifting the Rule 56 Burden** ................................................................ 13

**III. The District Court Violated Rule 56 by Refusing to Consider New Deposition Testimony and Other Evidence** ....................................................18

**IV. The District Court Misapplied Intermediate Scrutiny to the Sex-Based Equal Protection Claim** ..........................................................21

**V. The District Court Erroneously Denied Injunctive Relief Without an Evidentiary Hearing Despite Material Fact Disputes** .................................26

**VI. The District Court Improperly Restricted Discovery Necessary to Prove Discriminatory Intent and Pretext** .......................................30

**VII. The District Court Erroneously Credited BHISD's Non-Empirical "Studies" and Analogies to Military and Workplace Grooming Codes**....35

**VIII. The District Court Erred in Dismissing the CROWN Act Claim** ....41

**IX. The Cumulative Effect of the Court's Actions Created a Fundamentally Unfair Process and Deprived Plaintiff of a Merits Trial** .47

CONCLUSION ............................................................................49

CERTIFICATE OF SERVICE ......................................................51

CERTIFICATE OF COMPLIANCE .............................................52

## TABLE OF AUTHORITIES

**Cases**

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989) ...................................................................................27

*Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 523–25 (S.D. Tex. 2020) ...................................................................................................38

*Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333–34 (5th Cir. 2002)....31

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) .........................................17

*Craig v. Boren*, 429 U.S. 190, 197–204 (1976).......................................................40

*Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993) ................14

*Forsyth v. Barr*, 19 F.3d 1527, 1533–37 (5th Cir. 1994) ........................................20

*Free the Nipple–Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806–07 (10th Cir. 2019)...............................................................................................25

*Glenn v. Brumby*, 663 F.3d 1312, 1316–17 (11th Cir. 2011)..................................24

*Hayden v. Greensburg Community School Corporation*, 743 F.3d 569 (7th Cir. 2014)......................................................................................................39

Hibernia *National Bank v. Administracion Central Sociedad Anonima* 776 F.2d 1277, 1279–80 (5th Cir. 1985) ....................................................................19

in *Johnson v. Pettiford*, 442 F.3d 917, 918–19 (5th Cir. 2006)...............................19

*John v. La.* (Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 708–09 (5th Cir. 1985).......................................................................................................20

*Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)............................29

*McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)..........27

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05 (1973).......................34

*McDonnell Douglas Corp. v. Green,* 411 U.S. at 804–05 .......................................31

*Mississippi University for Women v. Hogan*, 458 U.S. 718 (1982) .......................23

Reed v. Iowa Marine & Repair Corp., 16 F.3d 82, 84–87 (5th Cir. 1994) .............48

*Supreme Court in Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395–96 (1981)........34

*Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004).......................14

*Templet*, 367 F.3d at 479........................................................................................17

*Ty, Inc. v. GMA Accessories, Inc.*132 F.3d 1167, 1171–72 (7th Cir. 1997) ...........34

*United States v. Virginia*, 518 U.S. 515, 532–33 (1996)........................................38

*United States v. Virginia,* 518 U.S. 515, 533 (1996)..............................................24

*Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980) .............................23

**Statutes**

42 U.S.C.§ 1983 ...............................................................................................46

**Rules**

Fed R. Civ. Proc. 30(b)(6) ...............................................................................32
Fed. R. App. P. 4(a)(4).......................................................................................9
Fed. R. Civ. Rule 56............................................................................... 15, 18
Federal Rule of Civil Procedure 54 ...................................................................15
Federal Rule of Civil Procedure 59 ...................................................................15
Rule 56 ..............................................................................................................17

**Regulations**

Section 25.902 to the Texas Education Code .......................................................42

## JURISDICTIONAL STATEMENT

The district court exercised jurisdiction under 28 U.S.C. § 1331 because Appellant asserted federal claims arising under the Constitution and laws of the United States, including a sex-based Equal Protection claim pursuant to 42 U.S.C. § 1983 and a claim under Title VI of the Civil Rights Act of 1964. The district court also had supplemental jurisdiction over Appellant's state-law claims under 28 U.S.C. § 1367(a).

The district court entered Final Judgment on July 24, 2025, disposing of all claims as to all parties. See Dkt. 190 ("FINAL JUDGMENT. Case terminated on 7/24/2025."). On August 24, 2025, Appellant filed a Notice of Appeal from the Final Judgment. See Dkt. 197.

Although the Notice of Appeal was filed before the expiration of the appeal deadline, it was not premature under Fed. R. App. P. 4(a)(4). At the time the Notice of Appeal was filed, Appellant had timely post-judgment motions pending under Rule 59, including a Motion for New Trial filed on August 21, 2025 (Dkt. 195) and a Rule 59 Motion for Reconsideration filed on August 14, 2025 (Dkt. 193). Both motions tolled the deadline to appeal under Fed. R. App. P. 4(a)(4)(A) until they were

3

resolved by the district court on August 22, 2025 (Dkt. 196) and August 19, 2025 (Dkt. 194), respectively.

Under Fed. R. App. P. 4(a)(4)(B)(i), a notice of appeal filed while tolling motions are pending becomes effective upon the district court's disposition of the last such motion. Accordingly, Appellant's Notice of Appeal filed on August 24, 2025, became effective—and timely—when the district court resolved all Rule 59 motions.

No further motion listed in Rule 4(a)(4) was pending after those rulings that would toll or extend the time to appeal. This Court therefore has proper appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion by granting the Appellee's motion for reconsideration of its prior denial of summary judgment absent any newly discovered evidence, intervening change in law, or clear error, contrary to the strict standards governing Rule 54(b) and Rule 59(e).

2. Whether the district court improperly shifted the Rule 56 burden of proof by refusing to consider Appellant's designated summary-judgment evidence,

declining to review the record, and granting summary judgment based solely on perceived citation deficiencies rather than on the merits.

3. Whether the district court violated Rule 56 by rejecting Appellant's new deposition testimony and documentary evidence, refusing to evaluate material factual disputes, and effectively granting summary judgment as a sanction—an approach foreclosed by *Hibernia,* and related precedent.

4. Whether the district court misapplied intermediate scrutiny by accepting Barbers Hill ISD's asserted gender-based justifications at face value, relying on stereotypes and non-empirical assertions, and failing to require the "exceedingly persuasive justification" required for sex-based classifications under *United States v. Virginia and Craig v. Boren*.

5. Whether the district court abused its discretion in denying Appellant's request for a temporary restraining order and preliminary injunction without holding an evidentiary hearing, despite ongoing irreparable harm, contested material facts, and the court's own prior recognition that Appellant continued to suffer under the challenged policy.

6. Whether the district court improperly restricted discovery by quashing key Rule 30(b)(6) and policymaker depositions and denying access to enforcement statistics and demographic data—evidence central to

establishing discriminatory intent and pretext under *McDonnell Douglas* and Fifth Circuit precedent.

7. Whether the district court erred in crediting BHISD's non-empirical "Dress and Grooming Study," analogies to military and workplace grooming codes, and other unsupported assertions as evidence satisfying intermediate scrutiny, despite contrary admissions from BHISD officials and the absence of any peer-reviewed or data-based justification.

8. Whether the district court erred in dismissing Appellant's CROWN Act claim, where the statute's text, purpose, and legislative history indicate that grooming codes restricting the length of protective hairstyles constitute prohibited race-based discrimination, and where Appellant plausibly pleaded such a claim under *Twombly* and *Iqbal*.

9. Whether, in the aggregate, the district court's procedural rulings—including curtailed discovery, refusal to consider evidence, denial of a hearing, and entry of dispositive sanctions—created cumulative prejudice that deprived Appellant of a fair opportunity to litigate the merits in violation of due process.

## STATEMENT OF THE CASE

This appeal arises from a challenge to Barbers Hill Independent School District's ("BHISD") male-only hair-length policy, which prohibits male students from wearing hair below the eyebrows, earlobes, or shirt collar, while imposing no comparable restriction on female students. Appellant Darryl George, a Black male student who wears his natural locs as an expression of cultural identity and familial tradition, was removed from regular instruction and placed in in-school suspension for more than 170 school days solely because of the length of his protected hairstyle. His mother, Darresha George, repeatedly sought relief from the District, but BHISD continued to discipline Darryl under the policy.

Appellant filed suit asserting sex-based discrimination under the Equal Protection Clause, race-based discrimination under Title VI and the Texas CROWN Act, and related claims. See ROA (Fourth Amended Complaint). During the pendency of the case, the district court denied Appellant's request for a temporary restraining order and preliminary injunction without an evidentiary hearing, despite acknowledging the significant burden placed on Darryl during his extended in-school suspension. The court also quashed Appellant's notices to depose BHISD's corporate representative and relevant policymakers, limited discovery on enforcement

7

statistics and comparative data, and declined to reopen discovery despite Appellant's showing that such evidence was necessary to prove discriminatory intent and pretext.

BHISD moved for summary judgment. After full briefing, the district court initially denied the motion, finding that genuine disputes of material fact existed and that BHISD had not carried its burden under intermediate scrutiny. Several months later, however, the District renewed its request for summary judgment in a motion styled as one for reconsideration. BHISD did not present new evidence, identify any intervening change in controlling law, or demonstrate a clear error in the court's prior ruling.

The district court granted reconsideration and reversed its prior ruling, not on the basis of new evidence or a change in law, but based on the court's own later assessment of Appellant's record citations. The court declined to consider Appellant's deposition testimony, exhibits, and designated summary-judgment evidence—stating that it would not "sift through the record"—and granted summary judgment to BHISD based solely on perceived briefing deficiencies. The court simultaneously imposed public sanctions against counsel, despite finding no bad-faith conduct.

On July 24, 2025, the district court entered Final Judgment dismissing all claims. See (ROA 5172-5182). Appellant timely filed post-judgment motions under Rule 59, including a Motion for New Trial and Motion for Reconsideration, which the court denied. (ROA 5792-5797,5800, 5801-6306, 6307-6308). Appellant then filed his Notice of Appeal on August 24, 2025. (ROA 6309-6315). Under Fed. R. App. P. 4(a)(4), the Notice of Appeal—filed while Rule 59 motions remained pending—became effective upon their disposition.

Appellant now seeks review of the district court's rulings on summary judgment, reconsideration, discovery restrictions, sanctions, and the denial of injunctive relief, as well as the dismissal of his CROWN Act claim.

## SUMMARY OF THE ARGUMENT

The district court's judgment should be reversed because it rests on a series of legal and procedural errors that deprived Appellant of a fair adjudication on the merits and contravene longstanding Fifth Circuit and Supreme Court precedent.

First, the district court abused its discretion in granting BHISD's motion for reconsideration of its prior denial of summary judgment. BHISD identified no newly discovered evidence, no intervening change in law, and no clear error in the original

9

ruling—requirements that are mandatory under Rule 54(b) and Rule 59(e). Reconsideration based solely on the court's later dissatisfaction with Appellant's citation formatting exceeds the narrow bounds of judicial reconsideration and constitutes reversible error under *Templet v. HydroChem and Edward H. Bohlin Co. v. Banning Co.*

Second, the district court improperly shifted the Rule 56 burden of proof. Rather than require BHISD to demonstrate the absence of a genuine dispute of material fact, the court refused to consider Appellant's designated summary-judgment evidence—including deposition testimony, exhibits, and documentary records—and granted judgment solely because it declined to review the materials. This approach is foreclosed by Celotex, Forsyth, and Hibernia, all of which hold that summary judgment cannot be granted as a sanction for briefing imperfections, and that a court may not ignore evidence actually submitted in opposition.

Third, the district court erred in rejecting Appellant's equal protection claim. BHISD's male-only hair-length rule is a sex-based classification subject to intermediate scrutiny. The District offered no empirical evidence connecting its policy to discipline, safety, or academic performance; instead, it relied on speculation, community preference, tradition, and analogies to military grooming codes. The Supreme Court has repeatedly rejected such stereotype-driven justifications as insufficient. Under *United States v. Virginia, Craig v. Boren,*

10

*Mississippi Univ. for Women v. Hogan, and Glenn v. Brumby*, BHISD was required to produce an "exceedingly persuasive justification," supported by evidence—not conjecture. The District produced none.

Fourth, the district court improperly denied Appellant's request for a temporary restraining order and preliminary injunction without holding an evidentiary hearing, despite substantial ongoing irreparable harm, contested factual issues, and unanswered questions regarding the District's enforcement practices. This deviation from the requirements of *Sierra Club v. FDIC, McDonald's Corp. v. Robertson, All Care Nursing*, and *Kaepa, Inc. v. Achilles Corp.* constitutes an abuse of discretion, as courts may deny injunctive relief on the papers only when no material facts are in dispute.

Fifth, the district court's discovery rulings crippled Appellant's ability to present his case. The court quashed key Rule 30(b)(6) and policymaker depositions, denied access to enforcement statistics and demographic data central to demonstrating discriminatory intent or pretext, and later faulted Appellant for lacking precisely the type of evidence the court had barred him from obtaining. Such restrictions conflict with *McDonnell Douglas, Brown v. Mississippi Valley State University*, and *Reed v. Iowa Marine,* all of which emphasize that summary judgment is improper when essential discovery has been denied.

Sixth, the district court erred in dismissing Appellant's CROWN Act claim. Properly construed, the Act prohibits grooming policies that function as de facto bans on protected hairstyles—particularly for Black students wearing locs, braids, or twists that naturally exceed certain lengths. The complaint plausibly alleged race-based discrimination under Twombly and Iqbal, and the legislative history confirms that Texas enacted the CROWN Act specifically to prevent the very type of enforcement at issue here.

Finally, even if any single error might be deemed harmless, the cumulative effect of the district court's actions—including curtailed discovery, refusal to consider evidence, denial of a required hearing, and the imposition of sanctions despite a finding of no bad faith—produced a fundamentally unfair proceeding inconsistent with due process. Under *Camenisch, Brown, Ty, Inc.,* and *Reed*, the judgment cannot stand.

For these reasons, Appellant respectfully requests that this Court reverse the judgment and remand for further proceedings consistent with law.

**ARGUMENT**

**I.    The District Court Abused Its Discretion by Conflating Sanctions With Merits Disposition**

**II. The District Court Improperly Reconsidered and Reversed Its Prior Denial of Summary Judgment Without Procedural Basis and by Shifting the Rule 56 Burden**

**A. No New Evidence or Legal Change Justified Reconsideration**

We are asking the Court to review sanctions pursuant to abuse of discretion and review the reconsideration de novo. The court reversed its earlier denial of summary (ROA.5172-5182) even though there was no new evidentiary developments (ROA. 5172–5182). The Appellee's motion for reconsideration did not identify newly discovered evidence, an intervening change in law, or a clear error in the prior ruling. (ROA.1928-1959) Instead, it simply re-litigated arguments the court had rejected months before and added complaints about Plaintiffs' briefing and record citations (ROA. 5172–5182). The only intervening change was the court's own stern critique of Plaintiffs' citations (ROA. 5172–5182). The district court's final order spends pages "fact-checking" Plaintiffs' references and concluding that many citations were misquoted (ROA. 5172–5182). On that basis, without additional proof from the Appellees, the court withdrew its prior denial and granted summary judgment in favor of Appellees (ROA. 5172-5182).

That district court's procedure does not fit the limited circumstances in which reconsideration is permissible. In this Circuit, reconsideration of a fully briefed dispositive motion is allowed only upon: "(1) newly discovered evidence; (2) an intervening change in law; or (3) the need to correct clear error or prevent manifest injustice." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004). In its motion for reconsideration, the appellants did not use any of the three prongs to identify why the District Court should grant their motion for reconsideration. Therefore, the District Court should have denied the motion for reconsideration. The appellees did not identify new evidence, did not identify a change in controlling law, and pointed to a "clear error" in the district court's prior ruling—only the Court's subsequent criticism of Plaintiffs' briefing (ROA.1342-2363)(ROA.1928-1959)(ROA.1990-1995)(ROA. 5172–5182). A district court may not reopen a fully briefed dispositive motion merely because it later becomes dissatisfied with a party's citations. Reconsideration based on attorney-focused grievances, rather than evidentiary or legal grounds, exceeds judicial authority and constitutes an abuse of discretion requiring reversal by this honorable court.

The Fifth Circuit has repeatedly emphasized a Rule 59(e) motion is "not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered before the entry of judgment." *Templet,* 367 F.3d at 478. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). likewise instructs that

14

reopening a case "without a truly compelling reason" is an abuse of discretion. Here, the Appellee only relitigated its earlier motion and attack the quality of Plaintiffs' citations (ROA. 5172–5182). The district court, in turn, made no findings under the Federal Rule of Civil Procedure 59 or Federal Rule of Civil Procedure 54 standards—identifying no newly discovered evidence or legal error—but instead declined to review the summary-judgment evidence Plaintiffs had filed, stated it would not search the record, criticized Plaintiffs' citation format, and then—based solely on those criticisms—reversed its prior denial and granted summary judgment to the Appellee (ROA. 5179–5181). The District court granting the Appellee's motion for reconsideration and reversal of its denial of appellee's summary judgment is not aligned with standards of Templet and Bohlin and amounts to reversible legal error.

**B. The Court Impermissibly Shifted the Rule 56 Burden and Refused to Consider Record Evidence**

The district court's reconsideration order reversed the Fed. R. Civ. Rule 56 burden of proof. The Appellee did not offer new evidence—indeed, it offered nothing at all beyond its earlier briefing.(ROA1928-1959) Appellants, by contrast, submitted full summary-judgment evidence, including deposition excerpts, exhibits, and documents cited throughout the record (ROA. 1996–5142). Yet the court expressly refused to review the evidence, stating that it "would not sift through the

15

record," and instead granted summary judgment solely because it found fault with Appellants' citation formatting (ROA. 5172–5182).

Federal Rules of Civil Procedure 56 does not permit such an inversion. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact. The non-movant does not lose by default because the court dislikes counsel's citations. Failure to respond does not permit a court to grant summary judgment unless the movant has discharged its burden"). By refusing to consider Appellants' properly attached evidence and granting judgment without any evidentiary showing from the Appellee, the court committed structural legal error (ROA. 5172–5182).

The Fifth Circuit squarely disavows district court's approach. Even when a non-movant files no response at all, summary judgment may be granted only if the movant's evidence independently establishes a right to judgment. 843 F.2d at 174. The court may not grant judgment as a sanction or because of defects in non-movant's briefing. The Appellees did not provide new evidence on reconsideration, while Appellants attached depositions and exhibits supporting numerous factual disputes (ROA. 5183–5184). The court explicitly refused to review that evidence and granted summary judgment solely because it found Plaintiffs' citations inadequate (ROA. 5172–5182). It is clear that such a result is impermissible: the

16

moving party must carry its burden under Rule 56, and the non-movant does not lose simply because the court is dissatisfied with counsel's formatting.

Moreover, by granting reconsideration without new evidence and then entering judgment for the Appellees based solely on perceived deficiencies in Appellants' briefing, the Court impermissibly shifted the burden of proof as required by Rule 56 (ROA. 5172–5182). The moving party bears the burden to establish an entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The non-movant does not lose because the court dislikes its citations; it loses only if the movant demonstrates the absence of a genuine issue of material fact. A district court may accept movant's facts as undisputed only when the non-movant fails to respond at all. Here, Appellants responded fully and attached the underlying evidence (ROA. 1996–5142). The Court simply refused to look at it (ROA. 5172–5182).

The Fifth Circuit has made clear that a district court abuses its discretion where reconsideration is granted without satisfying the governing standards or where the court "reopen[s] a case without a truly compelling reason." *Templet*, 367 F.3d at 479. Granting reconsideration —based solely on the Court's dissatisfaction with counsel's citations, despite attaching the evidence and raising genuine issues of material fact—was not merely a misapplication of discretion it is improper. It is a structural legal error inconsistent with Templet, Bohlin, and Rule 56 itself. Because

17

no new evidence, no change in law, and no manifest error justified reopening the summary-judgment ruling, the district court's decision to reconsider and reverse its prior denial of summary judgment was an abuse of discretion and must be reversed by this Court.

### III. The District Court Violated Rule 56 by Refusing to Consider New Deposition Testimony and Other Evidence

We are asking the court to review this for abuse of discretion. Appellants submitted substantial new evidence—including deposition testimony of school officials—to oppose summary judgment, but the court refused to consider it, citing technical shortcomings in the briefing (ROA.5254-5618). For instance, an official admitted in deposition that he was unaware of any empirical data linking male hair length to discipline or student success, a fact that directly supports Appellants' equal-protection claim. Yet the court noted that Plaintiffs had "filed the entire discovery record" and declared "that won't do," refusing to "sift through" the voluminous evidence for factual disputes (ROA.5172-5182) . Under Rule 56, a court must view the evidence in the light most favorable to the non-movant and evaluate the evidence actually designated. Here, however, the judge effectively ignored Plaintiff's new proof by insisting that every fact be pinpointed perfectly and, when dissatisfied with citation format, simply declined to consider the attached record at all (ROA.5172-5182). The result was that genuine issues of material fact raised by

18

the new depositions were never meaningfully addressed, contrary to the summary-judgment standard.

The district court's approach mirrors the reversible error identified in *Johnson v. Pettiford*, 442 F.3d 917, 918–19 (5th Cir. 2006) where the Fifth Circuit held that a court may not dispose of a case on a dispositive motion merely because it views the non-movant's response as deficient.. In Pettiford, the district court granted a motion to dismiss solely because the petitioner failed to respond, but the Fifth Circuit vacated the judgment, emphasizing that such a ruling is improper absent (1) a clear record of delay or contumacious conduct and (2) an express determination that lesser sanctions would not suffice. Id. at 919. Here, the district court effectively did the same thing: it refused to consider Plaintiffs' evidence, criticized citation format, and then granted summary judgment without engaging the Rule 56 merits or identifying any delay, misconduct, or futility of lesser measures. As in Pettiford, the judgment cannot stand because it rests on procedural dissatisfaction—not on an evaluation of the evidentiary record or the governing burdens of proof.

The Fifth Circuit's decision in H*ibernia National Bank v. Administracion Central Sociedad Anonima* further reinforces that a district court may not grant a dispositive motion simply because it is procedurally dissatisfied with the non-movant's briefing. H*ibernia National Bank v. Administracion Central Sociedad Anonima* 776 F.2d 1277, 1279–80 (5th Cir. 1985). In Hibernia, the district court

19

granted summary judgment after counsel failed to meet a local rule deadline, then refused to consider the defendant's late-filed response. The Fifth Circuit reversed, emphasizing that summary judgment may never be entered merely due to a party's default; the movant must independently establish entitlement to judgment as a matter of law. Id. at 1279 (citing *John v. La.* (Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 708–09 (5th Cir. 1985)). The court further held that ignoring the non-movant's evidence and refusing to consider the merits—while relying solely on procedural missteps—constitutes an abuse of discretion requiring vacatur. Hibernia, 776 F.2d at 1280–81.

Here, the district court committed the same reversible error. It rejected Plaintiffs' evidence because it disapproved of citation format, refused to review the attached record, and then granted summary judgment without resolving the factual disputes raised. Under Hibernia, that is structural error requiring reversal.

The Fifth Circuit has repeatedly held that, even in complex cases involving motive or intent, a district court may not grant dispositive relief simply because it dislikes a party's briefing or citation format. In *Forsyth v. Barr*, the Court emphasized that while summary judgment may be appropriate when a nonmovant offers only "conclusory allegations, improbable inferences, and unsupported speculation," it is improper where the party has actually submitted evidence creating a factual dispute. *Forsyth v. Barr*, 19 F.3d 1527, 1533–37 (5th Cir. 1994). Forsyth

20

reiterates that Rule 56(e) requires a party to identify record evidence supporting its position, but it does not authorize a court to disregard competent evidence merely because the briefing is imperfect. *Id.* at 1537 ("Rule 56 does not impose upon the district court a duty to sift through the record," but the court must evaluate the evidence that is actually designated.

Here, Appellants submitted the full deposition transcripts and summary-judgment exhibits establishing genuine disputes of material fact; the court's refusal to consider this evidence—based solely on citation objections—mirrors the exact error Forsyth warns against. A court may decline to search the record for a party, but it may not refuse to consider evidence actually submitted and specifically designated. By treating citation format complaints as a basis to ignore live evidence, the district court impermissibly converted briefing issues into a dispositive sanction—contrary to Forsyth and Federal Rules of Civil Procedure 56.

## IV. The District Court Misapplied Intermediate Scrutiny to the Sex-Based Equal Protection Claim

We are asking the Court to review this for abuse of discretion. The district court erred on the merits of Appellant's equal protection claim by applying an unduly lenient form of intermediate scrutiny that effectively collapsed into rational-basis review. Under settled law, gender classifications must serve "important governmental objectives" and be "substantially related" to achieving those

21

objectives; the government bears the burden of providing an "exceedingly persuasive justification" supported by evidence, not stereotype or tradition. *Craig v. Boren* and *United States v. Virginia* make clear that mere assertions of discipline, tradition, or community sensibilities are not enough.

In its initial order denying summary judgment, the district court properly recognized that Barbers Hill ISD's vague appeals to "discipline, unity, and community expectations" were "constitutionally insufficient" without concrete evidence, emphasizing that merely asserting interests is not enough and that the school must demonstrate how its gender-specific hair rule advances those interests (ROA.1915-1926). Yet in its final judgment, the court reversed course and accepted the District's justifications—"career readiness," "community expectations," and "discipline"—at face value, without citing any sex-specific evidence that the hair-length rule actually furthers those interests (ROA.1915-1926)(ROA.5172-5182). For example, the court accepted the Appellee's claim that the policy prepares male students for jobs or the military, noting that it is legal for employers to have sex-differentiated grooming codes. That reasoning relies on broad generalizations and tradition—the very rationales intermediate scrutiny forbids.

Nothing in this record demonstrates that boys' longer hair undermines discipline or professionalism in a way girls' long hair does not, and the District offered no gender-related evidence linking the male-only hair-length rule to any

22

asserted governmental objective. By deferring to speculation, tradition, and community norms rather than demanding the "exceedingly persuasive justification" required for sex-based classifications, the district court misapplied intermediate scrutiny and committed reversible legal error.

*Mississippi University for Women v. Hogan*, 458 U.S. 718 (1982), confirms that when a government actor adopts a sex-based classification, the burden rests squarely on the State to produce an "exceedingly persuasive justification." Id. at 724. That burden is met only by demonstrating both that the classification serves important governmental objectives and that the sex-based means are substantially related to achieving those objectives. *Id.* (citing *Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150 (1980)). Critically, Hogan holds that neither tradition, assumptions about gender roles, nor vague invocations of educational philosophy can satisfy this standard; a justification must rest on evidence, not "archaic and stereotypic notions." Hogan, 458 U.S. at 725–26. The Court rejected Mississippi's reliance on past educational preferences, community expectations, and benign motives because the State produced no evidence showing that excluding men from the nursing program actually advanced the goals asserted, and where the State's own practices contradicted its justification—such as permitting men to attend the same classes as auditors—those inconsistencies were fatal under intermediate scrutiny. *Id.* at 728–31.

The Supreme Court has likewise reaffirmed that sex-based classifications trigger intermediate scrutiny: the government must show that its "gender classification . . . is substantially related to a sufficiently important governmental interest," and the justification must be "genuine, not hypothesized or invented post hoc in response to litigation." *United States v. Virginia,* 518 U.S. 515, 533 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. at 724–26. The Eleventh Circuit applied that same standard in Glenn v. Brumby, holding that sex-based state action— including discrimination grounded in gender stereotypes—"is subject to intermediate scrutiny under the Equal Protection Clause" and requires the State to demonstrate that its policy is "substantially related to a sufficiently important government interest," not merely rational or convenient. *Glenn v. Brumby*, 663 F.3d 1312, 1316–17 (11th Cir. 2011) (cleaned up). Glenn further emphasizes that the burden is "demanding and it rests entirely on the State," and that courts may not accept post hoc or stereotype-driven explanations for sex-based decisions. Id. at 1316–17 (quoting Virginia, 518 U.S. at 533).

Here, the district court did exactly what Virginia, Hogan, and Glenn forbid: it treated the male-only hair-length rule as if it needed only a rational connection to abstract notions of "discipline," "career readiness," and "community expectations," and it credited those interests without requiring any sex-specific evidence that forcing boys, but not girls, to cut their hair meaningfully advances them. By

accepting generalized, stereotype-laden justifications at face value, the court effectively shifted the burden away from the District and misapplied the governing equal-protection standard for sex-based classifications.

*Free the Nipple–Fort Collins v. City of Fort Collins* squarely illustrates this error. The Tenth Circuit held that gender classifications grounded in "public sensibilities," "morality," or assumptions about "the way women are" fail intermediate scrutiny as a matter of law because such justifications are stereotype-based and therefore not "important governmental objectives." *Free the Nipple–Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806–07 (10th Cir. 2019) ("Laws grounded in stereotypes about the way women are serve no important governmental interest."); see also *id*. at 805–07 (rejecting public-order, safety, and child-protection rationales where the government offered no sex-specific evidence showing actual harm, and the asserted interests merely reflected cultural sexualization of female anatomy). Free the Nipple emphasizes that intermediate scrutiny demands an "exceedingly persuasive justification," not hypothesized concerns, generalized social assumptions, or "morality" rationales. Id. at 802–03 (citing *United States v. Virginia, 518 U.S. at 531–33*).

By accepting the District's justifications—"discipline," "career readiness," and "community expectations"—without requiring sex-specific evidence that only boys' long hair undermines those interests, the district court repeated the

25

constitutional defect Free the Nipple condemns: treating "gendered social norms" as if they satisfied the government's evidentiary burden under intermediate scrutiny. I*d.* at 806 ("A female-only toplessness ban is an unnecessary and overbroad means…when more accurate and impartial lines can be drawn."). Thus, as in Free the Nipple, the court here failed to apply intermediate scrutiny at all; it permitted stereotype-driven assumptions to substitute for proof. Under controlling equal-protection doctrine, that misapplication is reversible legal error.

## V. The District Court Erroneously Denied Injunctive Relief Without an Evidentiary Hearing Despite Material Fact Disputes

The court also abused its discretion in denying Appellants' request for a temporary restraining order and preliminary injunction without any evidentiary hearing, despite ongoing irreparable harm and disputed facts (ROA.1632–1638). The court acknowledged that Appellant had a concrete injury and remained "burdened by the policy," as his family had to undertake burdensome logistical efforts while he was in in-school suspension (ROA.1225-1227)(ROA.1527–1529). George endured over 170 days of in school suspension—a serious harm to his education and well-being—before seeking injunctive relief (ROA.1634-1638). Despite this showing, the court refused relief on the papers, focusing on George's purported delay in filing the motion and concluding that the "lack of urgency" defeated his request (ROA.1634–1638). By relying on perceived delay and forgoing

26

an evidentiary hearing, the court failed to resolve factual disputes about the ongoing harm and the reasons for the timing (ROA.1632–1633, 1635–1637). This procedure deviated from the usual practice that, where material facts—such as imminence of harm or the impact of delay—are contested, a hearing and fact-finding are warranted before denying injunctive relief (ROA.1632–1638).

Federal courts have long held that a district court may resolve a motion for preliminary injunctive relief on written submissions only when there are no material facts in dispute. Where "the injunction turns on the resolution of bitterly disputed facts," "an evidentiary hearing is normally required to decide credibility issues." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998) (quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989)). In All Care, the Eleventh Circuit reversed because the district court decided a preliminary injunction based on "conflicting affidavits" without holding a hearing on "issues central" to the merits. 887 F.2d at 1538–39. *Sierra Club, Lone Star Chapter v. FDIC* likewise holds that "[a] district court may issue a preliminary injunction without an evidentiary hearing when the facts are not disputed." 992 F.2d 545, 551 (5th Cir. 1993) (emphasis added).

Here, by contrast, materially disputed facts went to the heart of injunctive relief—whether George was suffering ongoing irreparable harm from the grooming policy and whether any perceived "delay" actually undermined the urgency of that

27

harm. The district court nevertheless denied injunctive relief on the papers, relying on delay while never affording George any evidentiary hearing. That procedure conflicts with the principles articulated in Sierra Club, All Care, and McDonald's and constitutes an abuse of discretion.

The Seventh Circuit has similarly held that "[a]n evidentiary hearing is required if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction," and that the movant need only show it "has and intends to introduce evidence" that would affect the judge's decision. *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002). Here, George presented substantial factual disputes concerning the ongoing irreparable harm he was suffering, the educational impact of over 170 days of in school suspension, and the reasons for any perceived delay—facts the district court relied on but never heard evidence about. Under Sierra Club, All Care, McDonald's, and Promatek, the court's refusal to hold an evidentiary hearing before denying injunctive relief was a clear abuse of discretion.

The district court also erred by treating timing as a basis to deny injunctive relief without evaluating the factual reasons for the filing sequence. The Eleventh Circuit has made clear that delay does not automatically defeat irreparable harm, and that the inquiry turns on the explanation for the timing and the nature of the ongoing injury. In *Wreal, LLC v. Amazon.com, Inc.*, the court affirmed denial of a preliminary

28

injunction only because the plaintiff offered no explanation whatsoever for an unexplained five-month delay and relied on evidence that was available "at the time it filed its complaint." 840 F.3d 1244, 1248 (11th Cir. 2016). Wreal emphasizes that delay is relevant to irreparable harm only where the plaintiff acts "with the urgency of someone out on a meandering evening stroll," and only where the record shows the absence of imminent injury. *Id.* at 1246–48. Here, by contrast, George provided evidence of continuing, escalating harm and proffered factual explanations for the timing of his request—issues the court never heard. Under Wreal, delay cannot substitute for factual findings, and certainly cannot justify denying relief without a hearing on the very reasons for timing and the ongoing nature of the harm.

The district court's handling of Appellant's request for injunctive relief also conflicted with the procedural protections recognized by the Fifth Circuit under Rule 65(a)(1). That rule provides that "no preliminary injunction shall be issued without notice to the adverse party," and the Fifth Circuit has held that this notice requirement means that, when factual disputes are presented, the parties must be given "a fair opportunity and a meaningful hearing to present their differing versions of those facts before a preliminary injunction may be granted." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (cleaned up). Kaepa makes clear that it is only where no factual dispute is involved that "no oral hearing is required" and the court may proceed on written submissions alone. Id. Here, irreparable harm,

the ongoing impact of the grooming policy, and the significance of any alleged "delay" were all fact-intensive and genuinely contested. By denying injunctive relief on the papers—without any evidentiary hearing or meaningful opportunity to present live testimony on those disputes—the court failed to provide the "fair opportunity and meaningful hearing" that Kaepa requires and thus abused its discretion.

## VI. The District Court Improperly Restricted Discovery Necessary to Prove Discriminatory Intent and Pretext

### A. Denial of Enforcement Statistics and Demographic Data

We are asking the Court to review this for abuse of discretion. The trial court curtailed Plaintiffs' ability to obtain evidence about how the hair-length policy was enforced—information that was key to demonstrating discriminatory intent or pretext (ROA.1794–1799). In particular, when Plaintiff re-urged a motion to compel disciplinary and demographic data (statistics on who was punished under the hair policy), the court flatly denied it (ROA.1807–1810). The court reasoned that because only the gender-discrimination claim remained (the race-based claims having been dismissed), any evidence of racial disparities in enforcement was irrelevant (ROA.1844). Plaintiff argued that such data could show disparate impact as part of proving the policy's intent or lack of an exceedingly persuasive justification, but the court rejected that argument and refused to expand or reopen discovery (ROA.1828–1833; ROA.1844–1845). By denying access to information on how the policy was

applied in practice—for example, whether the rule was selectively enforced only against certain groups of students—the court handicapped Appellant's ability to demonstrate that the proffered justifications were a pretext for discrimination (ROA.1794–1796, 1828–1833).

The district court's refusal to compel or reopen discovery on enforcement statistics was reversible error because it deprived Plaintiff of precisely the type of evidence the Supreme Court and the Fifth Circuit deem essential to proving discriminatory intent and pretext (ROA.1807–1810; ROA.1844–1845). In *McDonnell Douglas Corp. v. Green*, the Court held that a Title VII plaintiff must be afforded a "full and fair opportunity" to demonstrate that the employer's stated justification is a pretext, expressly identifying statistical evidence, comparative-treatment records, and data reflecting the employer's general enforcement practices as "especially relevant" to revealing discriminatory motive. *McDonnell Douglas Corp. v. Green,* 411 U.S. at 804–05. McDonnell Douglas reversed where, as here, the district court "denied requests for discovery of statistical materials which may have been relevant" to proving pretext. *Id.*

Likewise, the Fifth Circuit has held that cutting off discovery that prevents a civil-rights plaintiff from obtaining evidence exclusively in the defendant's possession is an abuse of discretion requiring reversal. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 333–34 (5th Cir. 2002) ("when a party is not given a full

31

and fair opportunity to discover information essential to its opposition… the limitation on discovery is reversible error"). Enforcement data showing who was disciplined, how often, and whether similarly situated students were treated differently goes directly to pretext and discriminatory intent under McDonnell Douglas. By barring access to those records and then faulting Plaintiff for lacking evidence of discriminatory enforcement, the district court "hamstrung" her ability to prove her case. Under McDonnell Douglas and Brown, this discovery restriction was not merely incorrect—it was reversible error.

## B. Quashing Depositions of Key School Witnesses and Then Penalizing Plaintiff for the Resulting Gaps

The district court further prejudiced Appellant's ability to obtain injunctive relief and to oppose summary judgment by quashing depositions that would have supplied the factual disputes necessary for an evidentiary injunction hearing and a full merits record ROA.1479–1780. When Plaintiff properly noticed the Fed R. Civ. Proc. 30(b)(6) deposition of Barbers Hill ISD's corporate representative—as well as depositions of key policy-makers and enforcers—the district court granted the Appellee's motion to quash and ordered that none of those depositions proceed "until further notice" (ROA.1644; ROA.1668–1679; ROA.1690–1722; ROA.1479). This ruling came before the scheduled injunction hearing and before the first round of summary-judgment briefing, thereby freezing the factual record at a moment where

Appellee possessed all information bearing on the development, rationale, and enforcement of the hair-length policy (ROA.1750–1760).

By halting those depositions, the court prevented Plaintiff from obtaining evidence that would have created genuine disputes of material fact—precisely the kind of evidence that federal law requires before a court may deny a preliminary injunction or resolve a motion "on the papers." In effect, the court tied Appellant's hands: it barred the discovery needed to show pretext, selective enforcement, and irreparable harm, then relied on the absence of that very evidence to conclude that no factual disputes existed and to refuse an injunction without a hearing. The sequence of blocking discovery, then penalizing Appellant for lacking the discovery the court prohibited—constituted legal error and deprived Appellant of a fair opportunity to meet the threshold showing required for injunctive relief.

The district court's decision to quash Appellee's depositions and then deny injunctive relief "on the papers" is misaligned with the Supreme Court and Fifth Circuit precedent. In *McDonnell Douglas Corp. v. Green*, the Court made clear that a discrimination plaintiff must be afforded a "full and fair opportunity" to demonstrate pretext, specifically identifying statistical evidence, comparator treatment, and the employer's general practices as "especially relevant" and reversing where the trial court had denied discovery of statistical materials relevant to the Title VII claim. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804–05

33

(1973). The Fifth Circuit likewise holds that "summary judgment assumes some discovery," and that "when a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error." *Brown*, 311 F.3d at 333–34.

Regarding the injunction, the *Supreme Court in Univ. of Tex. v. Camenisch* stressed that a preliminary injunction is meant only to preserve the parties' positions "until a trial on the merits can be held," and that preliminary decisions are made on incomplete procedures and evidence, not as a final adjudication of the merits, absent a proper Rule 65(a)(2) consolidation with clear notice. *Supreme Court in Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395–96 (1981). The Seventh Circuit in *Ty, Inc. v. GMA Accessories, Inc.* explained that where "genuine issues of material fact are created by the response to a motion for a preliminary injunction, an evidentiary hearing is indeed required," and that the party must be allowed to present evidence that, if believed, would "so weaken the moving party's case as to affect the judge's decision on whether to issue an injunction." *Ty, Inc. v. GMA Accessories, Inc.*132 F.3d 1167, 1171–72 (7th Cir. 1997).

Here, George proffered exactly that kind of evidence through timely-noticed 30(b)(6) and policymaker depositions aimed at showing how the grooming rule was conceived, justified, and enforced. Yet the court quashed those depositions before the injunction hearing and first summary-judgment round, then relied on the

34

artificially barren record it had created to declare there were no factual disputes and to deny an evidentiary hearing (ROA.1479-1480; ROA.1750–1760). Under McDonnell Douglas, Brown, Camenisch, and Ty, that sequencing—blocking discovery needed to generate factual disputes, then penalizing the plaintiff for the absence of those disputes—is reversible error (ROA.1749–1750).

## VII. The District Court Erroneously Credited BHISD's Non-Empirical "Studies" and Analogies to Military and Workplace Grooming Codes

We are asking the Court to review this de novo and for clear error. In the appellate record, BHISD relied on materials it characterized as "studies" to justify its hair-length rule. The two main sources were (1) a 2020 "Dress and Grooming Study" prepared by BHISD staff and (2) references to military and workplace grooming codes. The study was attached to BHISD's motion for reconsideration and is reproduced at pages 19–23 of Document 169-1(ROA.1929–1931). The tendered document is not a study at all; it is a narrative document drafted by BHISD administrators asserting that the district's dress code promotes safety and discipline. The document cites President Clinton's 1996 initiative on school uniforms, quotes Maslow's hierarchy of needs, and claims that school shootings at Columbine, Parkland, and Santa Fe were "connected to an unenforced dress code." It then describes how BHISD staff looked up 1,440 Texas high school handbooks online, coded whether they referenced hair length, and concluded that more than 122,000

35

students are subject to similar policies. It does not include statistical analysis, peer-reviewed data, or any evidence linking hair length to academic performance or safety that would pass a Daubert challenge. BHISD also argued that its restriction prepares students for employers and "all branches of the U.S. military" that impose similar grooming standards, and that the policy reflects community values and student discipline. These assertions rely on Dr. Poole's experience and general statements about employer expectations, not empirical research.

Appellant's response to the motion for reconsideration directly attacked these materials(ROA.1990–2015). In Document 174 (look up ROA), Appellee noted that BHISD "never commissioned a study, held a statistically informed review, or evaluated outcomes associated with the grooming code." They highlighted deposition testimony from BHISD officials, including constitutional rights compliance officer Mandy Malone, admitting that the policy was based on tradition and community expectations rather than educational need. The response also pointed out that the Parent Advisory Dress Code Committee, on which BHISD relied for community support, lacked expert analysis, statistical basis, or professional review; its notes acknowledged that its conclusions were speculative and based on perception. Appellant argued that this reliance on tradition and personal preferences violates established constitutional standards and that community preference cannot justify a sex-based distinction. They further noted that BHISD's claimed preparation

36

for the military and employers was unsupported by evidence of how many students actually enter those fields and that the district offered no data correlating its hair rule with safety or educational outcomes.

These portions of the record show that the "studies" BHISD invoked were not studies at all, but self-serving narratives and references to unrelated military or workplace policies. Appellants challenged the legitimacy of these materials and demonstrated through discovery that BHISD had conducted no empirical analysis of its policy. On appeal, this Court should hold that the district court was not free to accept BHISD's assertions at face value while ignoring this contrary evidence, and that the absence of real evidence undercuts any claim that the hair-length rule is substantially related to important governmental objectives.

The district court erred in crediting BHISD's so-called "Dress and Grooming Study" and analogous references to military grooming codes. That document is nothing more than an internal memorandum quoting Maslow's hierarchy of needs and a 1996 presidential initiative, listing other districts' handbooks, and asserting, without data, that 122,000 students comply with similar rules; it contains no statistical analysis or peer-reviewed research. In Arnold v. Barbers Hill Independent School District, Judge Hanks considered the same hair-length policy and held that BHISD could not justify it: Superintendent Greg Poole admitted at the evidentiary hearing that he knew of no peer-reviewed research showing that limiting a boy's hair

fosters excellence, discipline, hygiene, respect for authority, or academic achievement, and BHISD officials conceded that allowing a male student with long hair caused no disruption. The court therefore concluded that BHISD's justifications were "arbitrary" and enjoined the policy for lack of evidence. *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 523–25 (S.D. Tex. 2020).

Here, BHISD concedes it has never commissioned an empirical study and instead relies on a parent committee that conducted no expert analysis. As in Arnold, such anecdotal assertions do not satisfy the "exceedingly persuasive justification" required for sex-based policies under *United States v. Virginia*, 518 U.S. 515, 532–33 (1996). The absence of genuine evidence therefore undermines BHISD's defense and warrants reversing the dismissal of the CROWN Act and equal-protection claims.

BHISD has already been admonished for presenting the same sort of unsupported "studies." In Arnold, the court granted a preliminary injunction after finding that BHISD lacked any empirical basis for its hair-length rule. During the evidentiary hearing, Superintendent Poole was questioned about whether he could cite "any peer reviewed research" showing that short hair promotes excellence, discipline, hygiene, respect for authority, or academic achievement. He admitted he could not. Other BHISD officials conceded that allowing a male student to wear long hair caused no disruption and did not undermine discipline or safety. Judge Hanks

therefore held that BHISD's justifications were "arbitrary" and unsupported, and enjoined the policy. See Arnold, 479 F. Supp. 3d at 523–25. In this case, BHISD again points to a 2020 "Dress and Grooming Study" and analogies to military and workplace grooming codes, yet it concedes it has never commissioned an empirical study and relies on a Parent Advisory committee that conducted no expert analysis. As in Arnold, the record shows BHISD has no evidence linking hair length to its purported objectives. The district court nonetheless credited BHISD's self-styled "study"; under Arnold, a similar evidentiary showing was deemed insufficient to survive heightened scrutiny, and BHISD's recycled assertions deserve no greater weight here.

*Hayden v. Greensburg Community School Corporation*, 743 F.3d 569 (7th Cir. 2014), likewise underscores why BHISD's reliance on its 2020 "Dress and Grooming Study" is deficient. There, the Seventh Circuit struck down a boys' basketball hair-length rule because the school could not show that its sex-specific grooming standard was part of a broader, evenhanded policy or that it was justified by anything more than untested assertions. Although the court upheld the rule under substantive due process, it reversed on equal protection and Title IX grounds, holding that a policy requiring male athletes—but not female athletes—to keep their hair cut above the ears and collar violated the Equal Protection Clause because "the record tells us nothing about any comparable grooming standards applied to girls

39

playing basketball" and the school offered no evidence justifying the sex-based distinction. *Id.* at 578–79. As in Hayden, BHISD has imposed a hair-length rule on boys and attempted to justify it with vague references to discipline, community expectations, and employer/military grooming codes, yet its own superintendent conceded that he knew of no peer-reviewed research linking hair length to educational objectives. Under Hayden and related authorities, courts require schools to show a real evidentiary basis for sex-based grooming standards; BHISD's self-styled study is not enough.

Craig v. Boren further illustrates the point. There, the Supreme Court held that gender-based classifications must advance an "important governmental objective" and be "substantially related" to that objective, striking down Oklahoma's law barring sale of 3.2% beer to 18- to 20-year-old males but not females because the State's proffered statistics—showing that only 2% of males and 0.18% of females in that age group were arrested for drunk driving—were too tenuous to justify the sex-based distinction. *Craig v. Boren*, 429 U.S. 190, 197–204 (1976). The Court emphasized that such broad, poorly tailored statistics cannot support invidious discrimination. This reasoning underscores why BHISD's reliance on its 2020 "Dress and Grooming Study" cannot withstand scrutiny. Just as the Boren Court rejected general arrest data as an adequate basis for discrimination, BHISD's narrative "study" offers no empirical evidence linking hair length to discipline or

safety. Instead, it relies on broad generalizations and analogies to the military—the same kind of loose-fitting justifications that Boren found constitutionally insufficient.

Under *United States v. Virginia*, sex-based classifications must be supported by an "exceedingly persuasive" justification, and the means chosen must be substantially related to an important governmental objective. 518 U.S. at 532–33. Barbers Hill's hair-length code singles out male students for short-hair requirements while allowing girls to wear long hair. The stated goals of promoting discipline or uniform appearance are precisely the kind of vague assertions and gender stereotypes the Court rejected in Virginia. Unless the district can show that its gender-specific grooming policy is narrowly tailored to serve a truly important objective—and not merely tradition or assumptions about male appearance—it violates the Fourteenth Amendment. BHISD's reliance on its non-empirical "study," military analogies, and community expectations falls far short of that standard.

## VIII. The District Court Erred in Dismissing the CROWN Act Claim

We are requesting review de novo. The district court also erred in dismissing Mr. George's CROWN Act claim at the pleading stage. Properly construed, the statute's text, legislative history, and remedial purpose make clear that the CROWN Act covers the challenged conduct, that the complaint plausibly alleged

discrimination, and that the Act is enforceable through § 1983 or, at a minimum, presents a state-law question appropriate for certification.

## A. The Statutory Text and Legislative Intent Cover Length-Based Bans That Function as De Facto Prohibitions on Protected Hairstyles

The CROWN Act is a remedial statute that must be read broadly. It prohibits discrimination based on "hair texture or protective hairstyles historically associated with race," specifically naming locs, braids, and twists. By their nature, these styles often extend beyond the shoulders. A policy that forbids hair below the ear lobes or shirt collar therefore functions as a de facto ban on protected hairstyles. The district court erred by artificially divorcing "hair texture" from length and by treating length restrictions as categorically outside the Act's scope.

In the Fourth Amended Complaint, Appellant explicitly pleaded a CROWN Act cause of action, alleging that he brought a race discrimination claim "pursuant to Title VI of the Civil Rights Act of 1964 and the CROWN Act (which added Section 25.902 to the Texas Education Code)." The complaint quotes the Act's definition of "protective hairstyle"—which includes braids, locs, and twists—and its prohibition on school dress or grooming policies that discriminate against such hairstyles. It details BHISD's current rule forbidding male students' hair from extending below the eyebrows, ears, or the top of a T-shirt collar and alleges that the district enforces this length restriction only against Black male students with locs

42

and similar protective styles. The pleading recounts that BHISD previously banned locs outright and amended its policy only after litigation, using the length requirement as a pretext to continue discriminating. It notes that D.G. wears locs as an expression of cultural identity and has been kept in in-school suspension because of the length of his locs. Counts One and Two reallege these facts and assert disparate-impact discrimination under Title VI and the CROWN Act. The complaint also incorporates Exhibit 3 (the CROWN Act itself) and Exhibit 4 (public statements by the Act's sponsors) to demonstrate legislative intent. These allegations and exhibits collectively show that the CROWN Act claim was properly pleaded and that BHISD's grooming code functions as a de facto ban on protected hairstyles, bringing it within the statute's scope.

Legislative intent reinforces the textual reading of the Crown Act. The CROWN Act was enacted in direct response to school districts, including Barbers Hill, using grooming codes to ban culturally significant hairstyles. Legislative sponsors urged the Texas Education Agency to issue guidance ensuring the Act is enforced "properly" so that grooming policies "do not unfairly penalize Black students." Representative Rhetta Andrews Bowers's September 22, 2023 press statement declares that she supports "any and all means necessary to bring justice, proper enforcement and implementation to all school districts" when it comes to the CROWN Act. Co-sponsor Ron Reynolds likewise condemned school districts that

43

impose "hair length restrictions for male students" as acting in "bad faith to continue discriminating against African American students." Their statements underscore that the Act's protections are not limited to hair texture or a particular length; rather, it aims to prevent districts from using length restrictions as a proxy to ban locs, braids, and twists.

Guidance issued by the NAACP Legal Defense Fund in January 2024 amplifies this intent, explaining that although the CROWN Act explicitly lists braids, locs, and twists, it "unequivocally prohibits discrimination based on hair texture [and] hair type" and covers grooming codes that "effectively target students of color" even if they do not explicitly mention those styles. The guidance notes that gender-specific hair-length rules can "disproportionately affect male students of color," infringing their ability to wear culturally significant hairstyles like braids and locs. It cites Arnold v. Barbers Hill ISD—a case involving the same district—as an example where a court enjoined a hair-length policy after finding statistical evidence that it was enforced disproportionately against Black students.

This legislative record shows that lawmakers sought to protect natural and cultural hairstyles regardless of length and viewed hair-length requirements as a mechanism for racial discrimination. The district court's narrow reading—treating length restrictions as categorically outside the Act's scope—contravenes this remedial purpose. Civil-rights statutes are to be construed liberally to effectuate their

44

intent; a court should therefore interpret the CROWN Act to prohibit grooming policies that, while facially neutral, effectively ban braids, locs, and twists by regulating their length.

## B. The Complaint Plausibly Alleged Discrimination Under Twombly and Iqbal

Under Twombly and Iqbal, a complaint need only allege enough facts to make the claim plausible; it need not prove the case. The Fourth Amended Complaint satisfies that standard. It sets out detailed factual allegations that BHISD selectively enforced its hair-length policy against Black male students with locs and other protective styles. It alleges that D.G. was pulled out of class, forced to sit on a small stool for eight hours, fed only a cold sandwich "like a prisoner" and denied hot lunches, while other students were allowed to keep long hair without discipline. The complaint further states that BHISD administrators have disciplined only Black male students with locs, braids, twists, or other protective styles, and that white or non-Black students with long hair were not punished. D.G. has been kept in in-school suspension continuously since August 31, 2023, denied the hot meals to which he is entitled under the free lunch program, and cut off from regular instruction. His mother was told she must buy him hot food if she wants him to have it, even though he qualifies for free hot lunch.

These factual allegations—which show a racially disparate impact and unequal treatment—permit a reasonable inference of race-based discrimination.

Because discovery could further substantiate these facts, dismissal at the pleading stage was inappropriate. Under Twombly and Iqbal, the complaint more than plausibly alleged a CROWN Act violation.

**C. The CROWN Act Is Enforceable via § 1983 or the Question Should Be Certified to the Texas Supreme Court**

The CROWN Act does not exist in isolation; it amends the Texas Education Code and operates alongside Title VI and other civil-rights provisions. The district court suggested that the Act lacks an express private right of action, but courts routinely recognize implied rights when the statute creates a substantive anti-discrimination mandate. Here, the CROWN Act prohibits school districts from adopting grooming policies that discriminate based on hair texture or protective hairstyles. That prohibition parallels Title VI's ban on race discrimination in education and closely resembles § 1981's protection against racial discrimination in contracts.

Under the in pari materia canon, related statutes should be construed together to advance their shared purpose. Because the CROWN Act is codified in the Education Code, which is enforced through Title VI and 42 U.S.C.§ 1983, the Act should be read as creating an enforceable right that plaintiffs can vindicate under § 1983 when a school district acts under color of state law to discriminate on the basis of race. Denying a private remedy would undermine the Legislature's intent and render the statute toothless.

46

If the Fifth Circuit has any doubt about whether Texas intended to create a private right of action, it should certify that question to the Texas Supreme Court. Certification is appropriate where a case turns on novel questions of state law that the state's highest court has not yet addressed. The availability of a private remedy under the CROWN Act is a significant issue of state law that will recur in Texas courts. By certifying the question, the Fifth Circuit can ensure that Texas has the first opportunity to interpret its own statute and clarify the mechanism by which individuals may enforce it.

## IX. The Cumulative Effect of the Court's Actions Created a Fundamentally Unfair Process and Deprived Plaintiff of a Merits Trial

Finally, even if any one of the foregoing errors might be deemed harmless in isolation, their combined effect was to prevent this case from ever reaching a trial on the merits. We are requesting that this be reviewed de novo. A court may not short-circuit the adjudicative process by denying discovery, refusing to hold required hearings, and then faulting a party for an incomplete factual record that the court itself prohibited them from developing.

As the Supreme Court held in *University of Texas v. Camenisch*, due process requires that parties receive a full and fair opportunity to develop evidence before adverse merits rulings, because preliminary or incomplete proceedings cannot substitute for merits adjudication. 451 U.S. 390, 395–96 (1981). Likewise, the

47

Seventh Circuit has stressed that when a court denies an evidentiary hearing or cuts off factual development, it may not then rely on the resulting factual gaps to grant dispositive relief, because the party "must be able to introduce evidence that, if believed, would affect the judge's decision." *Ty, Inc. v. GMA Accessories*, 132 F.3d 1167, 1171–72 (7th Cir. 1997). The Fifth Circuit similarly holds that summary judgment is improper when a party is denied the discovery necessary to oppose it—calling such denial reversible error. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 334–35 (5th Cir. 2002) (district court "abused its discretion" by granting summary judgment before allowing plaintiff to take essential depositions). And where the court's own orders or limits on discovery prevent a party from correcting or supplementing the record, sanctions or adverse merits rulings are improper. *Reed v. Iowa Marine & Repair Corp.*, 16 F.3d 82, 84–87 (5th Cir. 1994) (sanctions reversed where counsel was given no fair opportunity to cure or supplement responses).

Here, the court refused to allow Appellants to correct citation errors, submit a refined statement of facts, or complete discovery—while simultaneously relying on those very deficiencies to grant summary judgment. It quashed key depositions, denied motions to compel enforcement data, declined to hold an evidentiary injunction hearing despite disputed facts and ongoing irreparable harm, and then used the resulting thin record and citation imperfections as a basis to withdraw its

48

prior denial of summary judgment, grant judgment to the District, and issue public sanctions against counsel. Rather than permitting a simple cure or allowing factual supplementation, the court declared that "the District is entitled to summary judgment. End of story."

This abrupt termination, following months of quashed depositions, curtailed discovery, the absence of an injunction hearing, and the imposition of public sanctions despite a finding of no malice, deprived Plaintiff of any meaningful opportunity to present his evidence. Taken together, these procedural irregularities constitute cumulative prejudice that denied Plaintiff his day in court on a matter of great constitutional importance. Under Camenisch, Brown, Ty, and Reed, such cumulative unfairness warrants reversal and remand for proper proceedings on the merits.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court reverse the district court's Final Judgment, vacate the orders granting summary judgment, granting reconsideration, denying injunctive relief, restricting discovery, and imposing sanctions, and remand this case for further proceedings consistent with the correct legal standards.

Because the district court applied improper legal standards, declined to consider Appellant's designated evidence, curtailed essential discovery, and denied an evidentiary hearing despite contested material facts, Appellant further requests that, on remand, the district court be directed to permit full and fair discovery, to consider all properly submitted summary-judgment evidence, and to conduct any evidentiary hearings required under Rule 65 and binding precedent.

Appellant additionally requests all such other and further relief, at law or in equity, to which he may be justly entitled.

SUBMITTED BY:

S/Allie Rychaan Renee Booker
Allie Rychaan Renee Booker
Federal Bar No. 1089873
The Booker Law Firm
1200 Rothwell Street
Houston, TX 77002
(713) 292-2225 (office)
booker@bookerlawfirm.com

S/Joseph Kelly Plumbar
Joseph Kelly Plumbar
Federal Bar No. 1493814
Law Office of Joseph K. Plumbar
1200 Rothwell Street
Houston, TX 77002
(713) 384-5507 (office)
joseph@plumbarlaw.com

# CERTIFICATE OF SERVICE

I certify that on 12-3-2025, a true and correct copy of the foregoing Brief of Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the Court's CM/ECF system, which will automatically serve a copy on all counsel of record:

Counsel for Appellees
Richard A. Morris
Jonathan G. Brush
Amy Dawn Demmler
Rogers, Morris & Grover, L.L.P.
5718 Westheimer Road, Suite 1200
Houston, Texas 77057
Email: rmorris@rmgllp.com
Email: jbrush@rmgllp.com
Email: ademmler@rmgllp.com

S/Joseph Kelly Plumbar

**CERTIFICATE OF COMPLIANCE**

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 11,045 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

S/Joseph Kelly Plumbar