No. 25-40544

IN THE

# United States Court of Appeals
# for the Fifth Circuit

DARRYL GEORGE,
*Plaintiff-Appellant,*

v.

BARBERS HILL INDEPENDENT SCHOOL DISTRICT;
GREG POOLE; LANCE MURPHY; AND RYAN RODRIGUEZ,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas

## BRIEF FOR APPELLEES

Jonathan Brush
State Bar No. 24045576
jbrush@rmgllp.com

Amy Demmler
State Bar No. 24092337
ademmler@rmgllp.com

Kyle Stone
State Bar No. 24117100
kstone@rmgllp.com

Richard Morris
State Bar No. 14497750
rmorris@rmgllp.com

ROGERS, MORRIS & GROVER, L.L.P.
5718 Westheimer Rd., Ste. 1200
Houston, Texas 77057

*Attorneys for Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| Plaintiffs-Appellants | Counsel for Plaintiff-Appellant |
|---|---|
| Darryl George (current party) and Darresha George (prior party) | Allie Booker<br>BOOKER LAW FIRM<br>1200 Rothwell St.<br>Houston, Texas 77002<br>Telephone: (713) 292-2225<br><br>Joseph Plumbar<br>LAW OFFICE OF JOSEPH K. PLUMBAR<br>1200 Rothwell St.<br>Houston, Texas 77002<br>Telephone: (713) 384-5507 |

| Defendants-Appellees | Counsel for Defendants-Appellees |
|---|---|
| Barbers Hill Independent School District; Lance Murphy; and Ryan Rodriguez | Jonathan Griffin Brush<br>Amy Demmler<br>Richard Morris<br>Kyle Stone<br>ROGERS, MORRIS & GROVER, LLP<br>5718 Westheimer Road, Suite 1200<br>Houston, Texas 77057<br>Telephone: (713) 960-6000 |

/s/ Jonathan Griffin Brush

---

Jonathan Griffin Brush
*Attorney for Appellees*

ii

## ABBREVIATIONS

## PARTIES AND OTHER ENTITIES

| | |
|---|---|
| Appellant Darryl George | George |
| Appellee Barbers Hill Independent School District | the District |
| The District's Board of Trustees | the Board |
| Barbers Hill High School | BHHS |
| Parent Advisory Dress Code Committee | the PADC |
| Appellee Greg Poole | Poole |
| Appellee Lance Murphy | Murphy |
| Appellee Ryan Rodriguez | Rodriguez |
| The District, Poole, Murphy, and Rodriguez | the District Parties |
| Texas Governor Greg Abbott | Abbott |
| Texas Attorney General Ken Paxton | Paxton |
| Texas Education Agency | the TEA |
| Equal Employment Opportunity Commission | the EEOC |
| Goose Creek Consolidated Independent School District | Goose Creek CISD |

## STATUTORY PROVISIONS

| | |
|---|---|
| 42 U.S.C. § 1983 | § 1983 |
| Tex. Educ. Code § 25.902 | the CROWN Act |

## POLICY PROVISIONS OR TERMINOLOGY

| | |
|---|---|
| The District's Student Code of Conduct | SCOC |
| The hair-length restriction in the District's Code | the Restriction |
| In-school suspension | ISS |

## COURTS

| | |
|---|---|
| The Houston Division of the Southern District of Texas | the Houston Court |
| The Galveston Division of the Southern District of Texas | the Galveston Court or the district court |

## CITATIONS

| | |
|---|---|
| Citations to the Record on Appeal | ROA.[Page] |
| Citations to Appellant's Brief | George Br. at [Page] |

iv

## STATEMENT REGARDING ORAL ARGUMENT

The District Parties believe the issues can be sufficiently addressed on the briefs and thus ask the Court to place this matter on its summary calendar. If the Court grants oral argument, the District Parties stand ready to participate and request equal time.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

ABBREVIATIONS .....................................................................iii

STATEMENT REGARDING ORAL ARGUMENT .................................v

TABLE OF CONTENTS ...........................................................vi

TABLE OF AUTHORITIES.............................................................x

STATEMENT OF JURISDICTION......................................................1

STATEMENT OF THE ISSUES.........................................................2

STATEMENT OF THE CASE ..........................................................3

    A.    Factual Background...................................................................3

        1.    The District is a high-performing Texas school district ...............................................................3

        2.    The dress and grooming code in the SCOC reflects community expectations, ensures student success, and advances career readiness .....................................4

        3.    George and his mother agreed he would follow the SCOC, but they backtracked and repeatedly violated it...................................................................5

    B.    Procedural Background............................................................6

        1.    George and his mother sued the State of Texas and the District Parties for alleged civil rights violations...6

2. The district court dismissed most of George's claims, leaving only his Equal Protection sex-discrimination claim ........................................................................... 7

3. One year after filing his lawsuit, George sought a preliminary injunction; the district court denied the request ..................................................................................... 7

4. The district court granted summary judgment for the District on the remaining claim and entered sanctions for George's repeated violations of Rule 11 ................... 8

STANDARD OF REVIEW ...................................................................... 9

SUMMARY OF THE ARGUMENT ........................................................ 9

ARGUMENT AND AUTHORITIES ...................................................... 10

A. On appeal, George abandoned most of his claims ................ 10

B. George's brief violates Rule 28 by citing non-existent quotations ..................................................................... 11

C. The district court's orders relating to the denial of a preliminary injunction and discovery weren't an abuse of discretion ............................................................... 12

1. While he says otherwise, the record confirms George's counsel participated in a hearing on the merits of his application for injunctive relief ............................... 12

2. George's complaints about discovery are inaccurate and, even if true, unhelpful to him at this juncture .... 20

D. The district court properly dismissed this case ................... 24

1. The district court had the authority to reconsider its summary judgment order ........................................... 24

2. The district court wasn't required to sift through the 13,000-page summary judgment record to find evidence to support George's position........................................25

3. Respectfully, the district court should've applied rational basis review ...................................................28

    a. The Constitution does not create a "right to wear long hair" in school...............................................29

    b. This issue involves a circuit split .......................32

4. Even under intermediate scrutiny, the district court correctly concluded the District carried its burden with respect to George's Equal Protection sex-discrimination claim ............................................................................34

    a. Reflecting community expectations, ensuring student success, and advancing career readiness are important governmental interests ...............35

    b. The Restriction is substantially related to advancing the stated important governmental interests............................................................................38

5. George's arguments about the CROWN Act miss the mark, as the CROWN Act doesn't apply, waive the District's immunity, or create a private cause of action ..................................................................................49

6. The district court properly dismissed George's Title VI claim ....................................................................................53

E. The district court's modest sanctions weren't an abuse of discretion given the serious misconduct at issue: fabricated evidence ..............................................................................55

CONCLUSION AND PRAYER ............................................................ 57

CERTIFICATE OF SERVICE ............................................................ 60

CERTIFICATE OF COMPLIANCE ..................................................... 61

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Abraham v. Alpha Chi Omega,*
  708 F.3d 614 (5th Cir. 2013) ....................................................... 17

*Adams v. Memorial Hermann,*
  973 F.3d 343 (5th Cir. 2020) .............................................. 12, 13, 14

*Alexander v. Sandoval,*
  532 U.S. 275 (2001) ..................................................................... 53

*Anderson v. Jackson,*
  556 F.3d 351 (5th Cir. 2009) ....................................................... 14

*Arnold v. Barbers Hill Indep. Sch. Dist.,*
  479 F. Supp. 3d 511 (S.D. Tex. 2020) .......................................... 47

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................... 51

*Austin v. Kroger Tex., L.P.,*
  864 F.3d 326 (5th Cir. 2017) ....................................................... 25

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
  492 U.S. 469 (1989) ..................................................................... 39

*BedRoc Ltd. v. United States,*
  541 U.S. 176 (2004) ..................................................................... 49

*Blau v. Fort Thomas Pub. Sch. Dist.,*
  401 F.3d 381 (6th Cir. 2005) ....................................................... 36

*Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.,*
  577 F.3d 250 (5th Cir. 2009) ....................................................... 13

*Boire v. Pilot Freight Carriers, Inc.*,
515 F.2d 1185 (5th Cir. 1975) ...................................................... 18

*Brown v. Miss. Valley State Univ.*,
311 F.3d 328 (5th Cir. 2002) ......................................................22

*Canady v. Bossier Par. Sch. Bd.*,
240 F.3d 437 (5th Cir. 2001) ............................................ 35, 40, 41

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ......................................................20

*Craig v. Boren*,
423 U.S. 1047 (1976) ..................................................................31

*Craig v. Boren*,
429 U.S. 190 (1976) ............................................................... 39, 47

*Curry v. Strain*,
262 F. App'x 650 (5th Cir. 2008) ................................................23

*Davenport v. Randolph Cnty. Bd. of Educ.*,
730 F.2d 1395 (11th Cir. 1984) ............................................. 31, 32

*Davis v. Maddie*,
702 F. App'x 230 (5th Cir. 2017) ................................................17

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ............................................................... 33, 51

*Doe v. Banos*,
713 F. Supp. 2d 404 (D.N.J. 2010), *aff'd*,
416 F. App'x 185 (3d Cir. 2010) .................................................18

*Domico v. Rapides Par. Sch. Bd.*,
675 F.2d 100 (5th Cir. 1982) ......................................................31

*Edward H. Bohlin Co. v. Banning Co.*,
6 F.3d 350 (5th Cir. 1993) ............................................................ 11

*Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*,
541 U.S. 246 (2004) ..................................................................... 49

*Equal Emp. Opp. Comm'n v. Catastrophe Mgmt. Sols.*,
852 F.3d 1018 (11th Cir. 2016) .............................................. 54, 55

*Esparza v. Bd. of Trs.*,
182 F.3d 915 (5th Cir. 1999) ....................................................... 18

*Fagan v. Nat'l Cash Register Co.*,
481 F.2d 1115 (D.C. Cir. 1973) ................................................... 32

*Fenceroy v. Morehouse Par. Sch. Bd.*,
2006 WL 39255 (W.D. La. Jan. 6, 2006) ........................... 30, 32, 37

*Fennell v. Marion Indep. Sch. Dist.*,
804 F.3d 398 (5th Cir. 2015) ....................................................... 53

*Ferrell v. Dallas Indep. Sch. Dist.*,
392 F.2d 697 (5th Cir. 1968) ....................................................... 37

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994) ....................................................... 28

*Garland v. Cargill*,
602 U.S. 406 (2024) ..................................................................... 51

*Guillot ex rel. T.A.G. v. Russell*,
59 F.4th 743 (5th Cir. 2023) ....................................................... 36

*GWTP Invest., L.P. v. SES Americom, Inc.*,
497 F.3d 478 (5th Cir. 2007) ......................................................... 9

*Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*,
743 F.3d 569 (7th Cir. 2014) ....................................................... 38

*Hibernia v. Nat'l Bank v. Admin. Cent. Sociedad Anonima,*
776 F.2d 1277 (5th Cir. 1985) ...................................................... 27

*Jacobs v. Clark Cnty. Sch. Dist.,*
526 F.3d 419 (9th Cir. 2008) .......................................... 35, 36, 38

*Jenkins v. Methodist Hosps. of Dall., Inc.,*
478 F.3d 255 (5th Cir. 2007) .................................................. 9, 57

*Johnson v. Pettiford,*
442 F.3d 917 (5th Cir. 2006) ...................................................... 27

*Karr v. Schmidt,*
401 U.S. 1201 (1971) ............................................................. 29, 31

*Karr v. Schmidt,*
460 F.2d 609 (5th Cir. 1972) ............................................... Passim

*Kelley v. Alpine Site Servs., Inc.,*
110 F.4th 812 (5th Cir. 2024) ..................................................... 11

*King v. Saddleback Jr. Coll. Dist.,*
445 F.2d 932 (9th Cir. 1971) ...................................................... 32

*L&A Contracting Co. v. S. Concrete Servs., Inc.,*
17 F.3d 106 (5th Cir. 1994) .................................................. 54, 55

*Lewis v. Ascension Par. Sch. Bd.,*
806 F.3d 344 (5th Cir. 2015) ...................................................... 23

*Littlefield v. Forney Indep. Sch. Dist.,*
108 F. Supp. 2d 681 (N.D. Tex. 2000) ........................................ 46

*Littlefield v. Forney Indep. Sch. Dist.,*
268 F.3d 275 (5th Cir. 2001) .............................................. Passim

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ................................................................... 21

*Miss. Univ. for Women v. Hogan,*
    458 U.S. 718 (1982) ...................................................................... 34, 35

*Munaf v. Geren,*
    553 U.S. 674 (2008) ............................................................................ 13

*Mylett v. Jeane,*
    910 F.2d 296 (5th Cir. 1990) ............................................................ 47

*N.Y.C. Env't Just. All. v. Giuliani,*
    214 F.3d 65 (2d Cir. 2000) ............................................................... 54

*Nevares v. San Marcos Consol. Indep. Sch. Dist.,*
    111 F.3d 25 (5th Cir. 1997) ............................................................. 18

*Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., Inc.,*
    695 F.2d 839 (5th Cir. 1983) ........................................................... 26

*Novus Franchising, Inc. v. Dawson,*
    725 F.3d 885 (8th Cir. 2013) ........................................................... 18

*Oppenheimer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) .......................................................................... 23

*Outley v. Luke & Assocs., Inc.,*
    840 F.3d 212 (5th Cir. 2016) ........................................................... 28

*Pederson v. La. State Univ.,*
    213 F.3d 858 (5th Cir. 2000) ........................................................... 19

*Ragas v. Tenn. Gas Pipeline Co.,*
    136 F.3d 455 (5th Cir. 1998) ...................................................... 26, 28

*Rostker v. Goldberg,*
    453 U.S. 57 (1981) ............................................................................ 44

*Ruhrgas AG v. Marathon Oil Co.,*
526 U.S. 574 (1999) ................................................................ 16

*San Jacinto Sav. & Loan v. Kacal,*
921 F.2d 697 (5th Cir. 1991) .................................................... 51

*Swindol v. Aurora Flight Sci. Corps.,*
805 F.3d 516 (5th Cir. 2025) ...................................................... 3

*Templet v. HydroChem Inc.,*
367 F.3d 473 (5th Cir. 2004) ............................................ 11, 24

*Texas v. Equal Emp. Opp. Comm'n,*
2022 WL 22869778 (N.D. Tex. May 26, 2022) .............................. 45

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,*
393 U.S. 503 (1969) .......................................................... 33, 48

*Trent v. Perritt,*
391 F. Supp. 171 (S.D. Miss. 1975) ............................................ 34

*Tuan Anh Nguyen v. I.N.S.,*
533 U.S. 53 (2001) ............................................................ 39, 40

*Ty, Inc. v. GMA Accessories,*
132 F.3d 1167 (7th Cir. 1997) ............................................ 11, 22

*Tyler v. Hillsdale Cnty. Sheriff's Dep't,*
837 F.3d 678 (6th Cir. 2016) ...................................................... 39

*U.S. v. Butler,*
429 F.3d 140 (5th Cir. 2005) ........................................................ 9

*United States v. del Carpio Frescas,*
932 F.3d 324 (5th Cir. 2019) ...................................................... 26

*United States v. Moore,*
71 F.4th 392 (5th Cir. 2023) ................................................ 49, 50

*United States v. Murra,*
   879 F.3d 669 (5th Cir. 2018) ........................................................ 13

*United States v. Sanders,*
   952 F.3d 263 (5th Cir. 2020) ........................................................ 11

*United States v. Virginia,*
   518 U.S. 515 (1996) ............................................................... 34, 38

*Univ. of Tex. v. Camenisch,*
   451 U.S. 390 (1981) ...................................................................... 22

*Utah Gospel Mission v. Salt Lake City Corp.,*
   316 F. Supp. 2d 1201 (D. Utah 2004), *aff'd,*
   425 F.3d 1249 (10th Cir. 2005) ................................................... 18

*Vermont Right to Life Comm., Inc. v. Sorrell,*
   758 F.3d 118 (2d Cir. 2014) ......................................................... 39

*Veronia Sch. Dist. 47J v. Acton,*
   515 U.S. 646 (1995) ............................................................... 33, 48

*Willingham v. Macon Telegraph Pub. Co.,*
   507 F.2d 1084 (5th Cir. 1975) ..................................................... 45

*Zeller v. Donegal Sch. Dist. Bd. of Educ.,*
   517 F.2d 600 (3d Cir. 1975) ......................................................... 32

## STATE CASES

*Alamo Heights Indep. Sch. Dist. v. Clark,*
   544 S.W.3d 755 (Tex. 2018) ......................................................... 52

*Barber v. Colorado Indep. Sch. Dist.,*
   901 S.W.2d 447 (Tex. 1995) .................................................... 31, 33

*Bastrop Indep. Sch. Dist. v. Toungate,*
   958 S.W.2d 365 (Tex. 1997) ............................................. 29, 31, 32

*Jones ex rel. Cooper v. W.T. Henning Elementary Sch. Principal,*
    721 So. 2d 530 (La. App. 3rd Cir. 1998)........................................ 37

*Hines v. Caston Sch. Corp.,*
    651 N.E.2d 330 (Ind. App. 1995)................................................... 37

*Humphries v. Lincoln Par. Sch. Bd.,*
    467 So. 2d 870 (La. App. 2nd Cir. 1985) ...................................... 32

*Shows v. Freeman,*
    230 So. 2d 63 (Miss. 1969)............................................................ 32

*Tex. Dep't of Transp. v. Jones,*
    8 S.W.3d 636 (Tex. 1999)............................................................. 52

*Tex. Health Presbyterian Hosp. of Denton v. D.A.,*
    569 S.W.3d 126 (Tex. 2018)................................................... 50, 51

*Tooke v. City of Mexia,*
    197 S.W.3d 325 (Tex. 2006)......................................................... 52

*Wichita Falls State Hosp. v. Taylor,*
    106 S.W.3d 692 (Tex. 2003)......................................................... 52

## FEDERAL STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1404(a) ......................................................................... 7

42 U.S.C § 2000d .............................................................................. 53

50 U.S.C. § 3802(a) .......................................................................... 44

Fed. R. App. P. 28(a)(8)(A) ........................................................... 11

Fed. R. Civ. P. 54(b) ....................................................................... 24

90 Fed. Reg. 57141 (2025) .............................................................. 53

90 Fed. Reg. 8615 (2025) ...................................................................34

## STATE STATUTES

Tex. Educ. Code § 11.011 ....................................................................3

Tex. Educ. Code § 25.902 ..........................................................Passim

Tex. Educ. Code § 11.061(d) .................................................................4

Tex. Educ. Code § 11.151(b) ................................................................4

Tex. Educ. Code § 28.008 .................................................................48

Tex. Educ. Code § 28.016 .................................................................48

## OTHER AUTHORITIES

Jillian R. Friedmann, *A Girl's Right to Bear Arms: An Equal Protection Analysis of Public School Dress Codes*,
     60 B.C. L. Rev. 2247 (2019) ...........................................................32

Tara A. Osbourne, *Behind the Uniform: Service Members & Impaired Driving*,
     64 No. 1 Judges' J. 28, 28 (2025)...................................................44

Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ...............................................................................51

## STATEMENT OF JURISDICTION

George sued the District, three of its employees, Abbott, and Paxton for alleged civil-rights violations. ROA.752–74. The district court dismissed the claims against the District employees, Abbott, and Paxton. ROA.1176–79. At the same time, the district court rejected most of George's claims, leaving only his Equal Protection sex-discrimination claim against the District. ROA.1178–97. Eventually, the district court granted summary judgment on the remaining claim, issued sanctions against George's counsel for Rule 11 violations, and entered a final judgment. ROA.5172–82, 5763–69. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

George raises a host of issues in his brief. Nine, to be exact. In large part, the issues overlap. For ease of appellate review, the District Parties frame the issues as follows:

1.   George abandoned most of his claims by not briefing them.

2.   George's brief violates Fed. R. App. P. 28 by attributing non-existent quotations to cases.

3.   The district court didn't abuse its substantial discretion over discovery when it (a) didn't give George a second hearing on the merits of injunctive relief and (b) required discovery to be tailored to existing—not dismissed—claims.

4.   The district court didn't err when it dismissed (a) George's Equal Protection sex-discrimination claim at the summary-judgment stage and (b) George's CROWN Act and Title VI claims at the motion-to-dismiss stage.

5.   The district court didn't abuse its discretion in issuing modest sanctions due to fabricated evidence in George's filings.

## STATEMENT OF THE CASE

### A.    Factual Background

#### 1.    The District is a high-performing Texas school district.

The District is a public school system organized under Texas law. Tex. Educ. Code § 11.011. It's "a suburban district in western Chambers County, along the upper Texas Gulf Coast," and "one of the fastest-growing districts … in the entire Houston area." Barbers Hill Indep. Sch. Dist., *About BHISD*, https://perma.cc/722F-VBJU (last visited Feb. 2, 2026);[1] ROA.1554. The District is also "one of the highest achieving school districts in the state." ROA.1554; *accord* Tex. Educ. Agency, *Barbers Hill ISD: Accountability Overview*, https://perma.cc/HQ9A-C85Z (last visited Feb. 2, 2026) (scoring the District highly for its achievements over the last three grading cycles because the District "prepares [its] students for success after high school in college, the workforce, or the military").

An elected Board of Trustees governs the District. Barbers Hill Indep. Sch. Dist., *Board of Trustees*, https://perma.cc/ZL5C-N99T (last

---

[1] The District's and the TEA's websites are self-authenticating public records and appropriate for judicial notice. *Swindol v. Aurora Flight Sci. Corps.*, 805 F.3d 516, 519 (5th Cir. 2025) (citations omitted).

visited Feb. 2, 2026). The Board has the "exclusive power" to govern the District, and trustees serve as unpaid volunteers. Tex. Educ. Code §§ 11.151(b), .061(d).

### 2. The dress and grooming code in the SCOC reflects community expectations, ensures student success, and advances career readiness.

Since at least the 1980s, the Board has maintained dress and grooming standards in the SCOC. ROA.1366. The SCOC has a hair-length restriction for male students—the Restriction. ROA.1372.

During the 2023–2024 school year, the Restriction provided that:

> Male students' hair will not extend, at any time, below the eyebrows or below the ear lobes. Male students' hair must not extend below the top of a t-shirt collar or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes when let down.

ROA.1372. The Restriction reflects community expectations, ensures student success, and advances career readiness for District students. ROA.1306. The Restriction has been a part of the District's dress and grooming code during all time periods relevant to this case. ROA.1366–68.

4

### 3. George and his mother agreed he would follow the SCOC, but they backtracked and repeatedly violated it.

In the 2022–2023 school year, George attended school in Goose Creek CISD, which has no hair-length restriction. ROA.1368. In August 2023, George enrolled in the District as a junior at BHHS because of the District's high quality and achievement record. ROA.1367, 1527, 1554.

Upon enrollment, George and his mother agreed he would follow the SCOC, including the Restriction. ROA.1375. They also agreed George would "be held accountable for [his] behavior and [would] be subject to disciplinary consequences" for violations:



ROA.1375 (emphasis added).

But George violated the Restriction on his first day at BHHS. ROA.1368. Consistent with the signed acknowledgment, George received ISS. ROA.1368. He refused to comply for the remainder of the 2023–2024 school year and received ISS daily. ROA.1368.

George re-enrolled at BHHS for the 2024–2025 school year. ROA.1368. At the beginning of the school year, his mother again acknowledged she and George would follow the SCOC, including the Restriction. ROA.1368, 1377. But again, George didn't comply and received ISS. ROA.1368. About a week into the 2024–2025 school year, George withdrew from the District. ROA.1481, 1527. He returned to Goose Creek CISD a short time later. ROA.1527.

## B.    Procedural Background

### 1.    George and his mother sued the State of Texas and the District Parties for alleged civil rights violations.

On September 23, 2023, George sued Abbott and Paxton in the Houston Division. ROA.24. George amended his complaint to add the District and three employees as defendants. ROA.53. The crux of George's complaint was that the State and the District violated the law by imposing or allowing the Restriction. ROA.752–71.

6

The Houston Court transferred the case to Galveston. ROA.654–61 (citing 28 U.S.C. § 1404(a)). The district court then allowed George to amend his complaint again, and he did so. ROA.682, 752.

### 2. The district court dismissed most of George's claims, leaving only his Equal Protection sex-discrimination claim.

All defendants filed motions to dismiss. ROA.803, 871. The district court dismissed all the claims against Abbott, Paxton, and the District employees. ROA.1176–79. It also dismissed most of George's claims against the District, leaving only the Equal Protection sex-discrimination claim. ROA.1180–96. George attempted to appeal the dismissal order. ROA.1404. This Court dismissed the appeal for lack of jurisdiction. ROA.1788 (dismissing appeal); *accord* ROA.1639–43 (denying George's request for interlocutory appeal).

### 3. One year after filing his lawsuit, George sought a preliminary injunction; the district court denied the request.

On August 14, 2024, George sought injunctive relief. ROA.1212–23. The district court denied the application. ROA.1632–36. The one-year delay between the lawsuit and the injunction request demonstrated "no apparent urgency to the request for injunctive relief." ROA.1636. And "the District," the district court explained, "ha[d] the clearly more

compelling case on whether George will prevail on his Equal Protection sex-discrimination claim." ROA.1637. George appealed, but this Court dismissed the appeal. ROA.1681–83, 1788.

### 4. The district court granted summary judgment for the District on the remaining claim and entered sanctions for George's violations of Rule 11.

The District moved for summary judgment, but George asked the court to defer ruling pending discovery. ROA.1342, 1432. The district court agreed, and the parties conducted discovery. ROA.1630. Following discovery, George still failed to respond to the motion. ROA.1918–19. Despite this, the district court denied the motion. ROA.1914–26. The District moved for reconsideration and submitted additional evidence disclosed during discovery. ROA.1928. George responded by attaching the entire discovery record and fabricating evidence—including non-existent quotations falsely attributed to District witnesses. *See generally* ROA.5143–71 (describing response's deficiencies).

The court granted reconsideration, entered summary judgment, and ordered George's counsel to explain the fabricated evidence. ROA.5172–82. George's counsel attributed the non-existent evidence to "transcription" errors and filed a "corrected" response, which "again r[an]

8

afoul of Rule 11." ROA.5765. The district court issued a public reprimand and required George's counsel to attend three hours of continuing legal education and entered a final judgment. ROA.5768–69. This appeal followed. ROA.6309.

## STANDARD OF REVIEW

This appeal concerns a Rule 12(b)(6) dismissal, a grant of summary judgment, some discovery orders, and a Rule 11 sanctions order. This Court "review[s] dispositive motions such as dismissals and summary judgments *de novo*." *GWTP Invest., L.P. v. SES Americom, Inc.*, 497 F.3d 478, 481 (5th Cir. 2007). The remaining orders are reviewed for an abuse of discretion. *U.S. v. Butler*, 429 F.3d 140, 148 (5th Cir. 2005) (court will affirm orders concerning discovery "unless the rulings are arbitrary or clearly unreasonable"); *Jenkins v. Methodist Hosps. of Dall., Inc.*, 478 F.3d 255, 263 (5th Cir. 2007) (explaining "very deferential" standard for reviewing sanctions orders).

## SUMMARY OF THE ARGUMENT

This case challenges a school's right to set and enforce dress and grooming standards. The district court didn't err in declining to punish the District for a rule that has historically been left to local control. The

Court should affirm for three reasons:

- *First*, the district court acted within its discretion in managing discovery and injunctive proceedings. The court properly limited discovery to live claims. None of those routine case-management decisions was an abuse of discretion.

- *Second*, the dispositive rulings were correct as a matter of law. George failed to raise a fact issue on his Equal Protection sex-discrimination claim. His CROWN Act claim fails because the statute regulates hairstyles (not length), contains no cause of action, and doesn't waive immunity. His Title VI claim hangs on disparate impact—something Title VI doesn't address.

- *Third*, the sanctions order was lenient. George's counsel fabricated evidence twice. The court issued only a reprimand and a continuing-education requirement. That restrained response easily falls within the court's discretion.

## ARGUMENT AND AUTHORITIES

George raises nine issues on appeal. *See generally* George Br. at 4–5. His appeal can be organized into three types of complaints concerning (1) discovery and injunctions; (2) dispositive orders; and (3) sanctions. But first, the District Parties note the claims abandoned on appeal and the deficiencies in George's appellate brief.

### A.    On appeal, George abandoned most of his claims.

George appealed several district court actions. ROA.6309–10. But he elected not to brief many of the issues, including—among others—the claims against the individual defendants and the state tort, due process,

10

Equal Protection race-discrimination, First Amendment, and Title IX claims. George Br. at 13–50. Since he "fails to cite any authority or even the record," those issues are "waived as inadequately briefed." *United States v. Sanders*, 952 F.3d 263, 278 n.18 (5th Cir. 2020) (citation omitted).

## B.     George's brief violates Rule 28 by citing non-existent quotations.

Rule 28 requires briefs to include the parties' "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" Fed. R. App. P. 28(a)(8)(A). This Court may strike noncompliant briefs or dismiss the appeal. *Kelley v. Alpine Site Servs., Inc.*, 110 F.4th 812, 817 (5th Cir. 2024).

George's brief runs afoul of Rule 28 because many of the quotes he attributes to cases don't exist. For example, he attributes various quotes to *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004), *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993), and *Ty, Inc. v. GMA Accessories*, 132 F.3d 1167, 1171–72 (7th Cir. 1997). George Br. at 14–15, 17, 47–48. But the cases don't contain the quoted language. Therefore, George didn't comply with Rule 28.

C.    **The district court's orders relating to the denial of a preliminary injunction and discovery weren't an abuse of discretion.**

On the discovery front, George contends that the district court erred in (1) "denying [his] request for a temporary restraining order and preliminary injunction without holding an evidentiary hearing" and (2) "improperly restricting discovery by quashing key … depositions and denying access to enforcement statistics and demographic data." George Br. at 5–6. These are addressed in turn.

1.    **While he says otherwise, the record confirms George's counsel participated in a hearing on the merits of his application for injunctive relief.**

George faults the district court for declining to grant him injunctive relief on the papers alone. George Br. at 26–30. His argument fails for at least four reasons.

*First*, evidentiary rulings "are subject to the harmless error doctrine." *Adams v. Memorial Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (citation omitted). So "even if the district court has abused its discretion, 'the ruling will be reversed only if it affected the substantial rights of the complaining party.'" *Id.* (citation omitted). George says the hearing denial was an abuse of discretion. George Br. at 26–30. But he doesn't explain why it matters. If George's claims aren't viable or were

12

adequately presented to the district court, as is the case here, any theoretical error in the hearing procedure is harmless. *See, e.g.*, *United States v. Murra*, 879 F.3d 669, 679 (5th Cir. 2018); *Adams*, 973 F.3d at 350 (if party has opportunity to present argument, denial of additional facts on same issue is likely harmless error). As George failed to explain how the supposed denial of a hearing changed the outcome of his case, the issue "is therefore abandoned due to inadequate briefing." *Murra*, 879 F.3d at 679 (citation omitted).

*Second*, a movant can only receive the "extraordinary and drastic" remedy of a preliminary injunction upon a showing of four elements. *Munaf v. Geren*, 553 U.S. 674, 690 (2008). Each element is mandatory. *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252–53 (5th Cir. 2009). In the district court, George only briefed two elements: the success-on-the-merits and the irreparable-harm elements. ROA.1212–22. But that's insufficient; if a movant fails to meet even one of the four elements, a court is obligated to deny injunctive relief. *Bluefield Water Ass'n*, 577 F.3d at 252–53. Because George's district court briefing didn't discuss the latter two elements, he couldn't prove an entitlement to an injunction. *See id.* So practically, whether a hearing

13

occurred is irrelevant—the result would've been the same. *See Adams*, 973 F.3d at 349.

*Third*, George misstates the record when he says the district court denied a hearing. As the district court observed, "[a]t no point did the [district] court deny [George] the right to a hearing." ROA.1756. In fact, on October 3, 2024, the district court "held an hour-long hearing on George's application for injunctive relief." ROA.1756 (citation omitted). The record reflects that the hearing took place, so George's contrary representations fall flat. ROA.15 (docket sheet), 6422–74 (transcript).

*Fourth*, George posits a hearing is needed if the request for relief concerns "materially disputed facts." George Br. at 27–30 (collecting cases). His description of the law is incomplete. True enough, the materiality of the facts at issue is relevant, but that's only part of the equation. "This circuit's precedent reflects a concern with *granting* injunctive relief without a hearing when the facts are hotly disputed" since "courts should be hesitant to award this 'extraordinary' form of relief without giving the adverse party a chance to defend itself." ROA.1757–58 (citations omitted); *Anderson v. Jackson*, 556 F.3d 351, 360–61 (5th Cir. 2009) (affirming hearing denial when court allowed

14

"extensive briefing," "did not rely on any disputed facts," and "held a telephone conference where each side presented its claims")

George runs into the same wall as the *Anderson* plaintiff. To start off, the parties completed "extensive briefing" on the topic. ROA.1757 n.2 (collecting sources). But perhaps more importantly, "[t]he facts were not disputed; George's request for injunctive relief failed as a matter of law." ROA.1758. The district court accepted George's representations about the supposed harm he faced. ROA.1651–55. While George cites a series of "facts" he says were disputed, George Br. at 29–30, the record confirms that the district court accepted his facts and ruled against him on legal grounds. ROA.1651–55, 1758.

Moreover, the district court acknowledged George's reasons for the one-year delay in seeking relief. *Compare* George Br. at 29 (saying he "proffered factual explanations for the timing of his request—issues the court never heard"), *with* ROA.1662–64 (acknowledging and responding to explanations for delay). George justified the delay not because of any change in circumstance, but because he thought he couldn't move for injunctive relief until the district court resolved the motions to dismiss.

ROA.1618–19. That misunderstanding was insufficient to justify the delay. ROA.1663–64.

Reading George's brief liberally, he wanted the injunction hearing to occur earlier. *Compare* ROA.1755, *with* George Br. at 26–30. However, as the district court explained, George caused the delay. ROA.1756, 875–76 (noting George's failure to follow process to request injunction). His first appeal and withdrawal from the District raised questions about the district court's jurisdiction. ROA.1756; *accord* ROA.1409, 1487–88. Federal courts must examine their subject-matter jurisdiction. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). So "it would have been improper to convene a hearing on the application" absent "the court's assurance that it had jurisdiction." ROA.1756.

The following timeline provides context for how George delayed the preliminary injunction hearing:

### Timeline

—————————————September 23, 2023
George files lawsuit.

August 6, 2024——————————
　　Order on motions to dismiss.

————————————August 14, 2024
George requests injunctive relief.

August 20, 2024——————
George appeals order on the
motions to dismiss.

——————————August 22–28, 2024
Parties brief the court's
jurisdiction pending appeal.

September 5–20, 2024——————
Parties brief the court's
jurisdiction after George's
withdrawal from school.

——————————October 3, 2024
Hearing on the court's jurisdiction
and merits of the injunctive relief
request.

ROA.4–15 (docket sheet).

George also seemingly faults the district court for not "schedul[ing] a hearing on the same issue after [it] denied the application." *Compare* ROA.1755, *with* George Br. at 26–30. But the law doesn't entitle him to a hearing, much less multiple hearings. *Davis v. Maddie*, 702 F. App'x 230, 231 (5th Cir. 2017) (denial of injunctive relief without an evidentiary hearing wasn't an abuse of discretion); ROA.1756–58 (collecting cases).

In any event, George is incorrect in assuming his more-than-one-year delay in seeking injunctive relief doesn't undermine his claim of "irreparable injury." ROA.1656–58 (district court reasoning and cases). After all, "[t]here is no doubt that laches may defeat claims for injunctive relief." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626 (5th Cir. 2013)

17

(citation omitted). "[D]elay alone may justify the denial of a preliminary injunction." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894–95 (8th Cir. 2013). And even where irreparable harm can be presumed, the presumption is "inoperative if the plaintiff has delayed … moving for preliminary injunctive relief." ROA.1656 (citations omitted). George delayed for five months before requesting "a pre-motion conference" and almost a year before seeking injunctive relief. ROA.849–52, 869–70, 1206–51. Shorter delays have precluded injunctive relief.[2]

Next, George's claim that he suffered irreparable harm is difficult to square with this Court's caselaw, which indicates placement in ISS doesn't deprive students of protected rights and can't be preliminarily enjoined. *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (serving ISS isn't "being denied access to public education, not even temporarily"); *Esparza v. Bd. of Trs.*, 182 F.3d 915, 915 (5th Cir. 1999) (denying relief when students sought injunction to avoid compliance with school dress code).

---

[2] *See, e.g., Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (three-month delay); *Doe v. Banos*, 713 F. Supp. 2d 404, 415 n.15 (D.N.J. 2010), *aff'd*, 416 F. App'x 185 (3d Cir. 2010) (two-month delay); *Utah Gospel Mission v. Salt Lake City Corp.*, 316 F. Supp. 2d 1201 (D. Utah 2004), *aff'd*, 425 F.3d 1249 (10th Cir. 2005) (two-month delay).

18

One final point warrants discussion. George complains that the district court denied his request for injunctive relief. George Br. at 28. But George's graduation moots the issue. *Pederson v. La. State Univ.*, 213 F.3d 858, 874 (5th Cir. 2000) (citations omitted); Goose Creek Consol. Indep. Sch. Dist., *Ross S. Sterling High School Graduation Program*, https://perma.cc/CHE8-8ELB (last visited Feb. 2, 2026) (noting George's graduation from high school on May 21, 2025). This is especially true where, as here, George doesn't seek to have his disciplinary records expunged. *See* ROA.752.

In sum, in requesting another hearing, "George simply seeks [yet] another chance to prove the merits of his claim for injunctive relief," something the law doesn't require. ROA.1758. "An additional evidentiary hearing would [have] further delay[ed] resolution of this issue without changing the outcome." ROA.1758. The district court allowed a hearing; even if another were required, the error was harmless, and the issue is mooted by George's graduation. George's complaints on this point are not grounds for reversal.

### 2.    George's complaints about discovery are inaccurate and, even if true, unhelpful to him at this juncture.

George complains that the district court limited discovery for a brief period, which he says prevented him from presenting his best case for a preliminary injunction. George Br. at 33. Relatedly, George charges the district court with "curtail[ing] [his] ability to obtain evidence about how the hair-length policy was enforced." George Br. at 30. The defects in both challenges become clear when viewed in context.

*First*, the district court didn't err in halting discovery before ruling on qualified immunity. The District Parties raised a qualified-immunity defense. ROA.845–46. Parties can't conduct discovery until the district court resolves that issue. *Carswell v. Camp*, 54 F.4th 307, 311 (5th Cir. 2022) ("district court abuse[s] its discretion by deferring its ruling on qualified immunity and subjecting the immunity-asserting defendants to discovery in the meantime"). If George wanted discovery earlier in this case, he should not have sued the individual defendants.

George also complains about the district court's "order quashing [the] deposition of the District's corporate representative … to reassess jurisdiction." ROA.1759. But in doing so, he omits context. For starters, George's counsel conceded that discovery wasn't needed to prove his

20

entitlement to injunctive relief. ROA.6434 ("We believe our client has shown that up until this moment that he will succeed on the merits absent any discovery."). Moreover, "[t]he court lifted the temporary hold immediately after it determined jurisdiction was proper." ROA.1759. The parties went on to "conduct[] discovery." ROA.1759. And "[t]o remedy any prejudice George may have suffered from not conducting discovery in September," the district court deferred ruling on the District's motion for summary judgment. ROA.1760; ROA.1630–31. George went on to depose five District witnesses. ROA.2023, 2069, 2163, 2277, 2343. This issue is thus moot.

George's reliance on *McDonnell Douglas* is misplaced. George Br. at 33–34. George says the case confirms that "a discrimination plaintiff must be afforded a 'full and fair opportunity to demonstrate pretext'" in employment cases. George Br. at 33. True enough, raising a fact issue on pretext is the final step in the framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). But that had nothing to do with George's sole remaining claim when he sought discovery—his facial challenge to the Restriction. Contrary to George's assertion, he received a "full and fair opportunity" to collect evidence. ROA.2023, 2069, 2163, 2277, 2343

21

(initial pages for deposition transcripts), 1996, 2021, 2444, 6545, 4194, 10047, 12148, 12805 (initial pages for docket numbers for 13,000 pages of written discovery George attached to a filing).

The other cases George cites fare no better. *Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 332–33 (5th Cir. 2002) (reversing in factually inapposite circumstance where district court granted summary judgment without allowing depositions); *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 497–98 (1981) (student's graduation mooted request for injunctive relief). George also circles back to his argument that he deserved a hearing. George Br. at 34 (citing *GMA Accessories, Inc.*, 132 F.3d at 1171-72). The District Parties have addressed this issue *ad nauseam. Supra* Section (C)(1). Long story short: he wasn't entitled to a hearing, and he received one.

*Second*, George complains that the district court didn't allow him to solicit evidence to bolster his then-dismissed claims. George Br. at 30–32. This argument lacks merit. Recall that the district court dismissed most of George's claims on August 6, 2024. ROA.1184–88. So as of that date, George's sole remaining claim was his facial sex-discrimination challenge to the Restriction. ROA.1199. Still, he insisted on discovery

unrelated to that claim, including "[e]vidence of the policy's enforcement and any disparate impacts on students of different racial or cultural backgrounds." ROA.1794–98.

Evidence of disparate impact isn't required when the government concedes its policy distinguishes between men and women because, at that juncture, the question becomes a legal one: whether it survives the appropriate level of scrutiny. *Lewis v. Ascension Par. Sch. Bd.*, 806 F.3d 344, 354 (5th Cir. 2015) (disparate impact evidence is needed only if the "government action [ ] is 'ostensibly neutral'") (citation omitted).

As the district court explained, "[i]t should go without saying, but the scope of discovery should be properly tailored to issues relevant and proportional to George's only remaining claim." ROA.1808. This decision accords with the caselaw. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978) ("it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken"); *Curry v. Strain*, 262 F. App'x 650, 652 (5th Cir. 2008) (no abuse of discretion in denying discovery where "the issues on which [a party] requested additional discovery related to claims that were previously dismissed").

23

George condemns the district court for creating and then relying on an "artificially barren record." But his portrayal runs into a wall: reality. The district court gave George ample opportunities to present his case. It considered multiple rounds of briefing on injunctive relief and summary judgment. George's alternative account is wrong.

## D. The district court properly dismissed this case.

### 1. The district court had the authority to reconsider its summary judgment order.

After discovery, the District moved for and received reconsideration of its summary-judgment motion. ROA.1938, 5172. George contends that the court's grant of reconsideration was improper. George Br. at 14 ("reconsideration of a fully briefed dispositive motion is allowed only upon: '(1) newly discovered evidence; (2) an intervening change in law; or (3) the need to correct clear error or prevent manifest injustice'") (quoting *Templet*, 367 F.3d at 478–79).[3] This thrice-recycled argument isn't new or correct. ROA.5172, 5763–64.

District courts may modify their interlocutory orders at any time before final judgment. Fed. R. Civ. P. 54(b). To facilitate this process,

---

[3] This quote is one of the ones that doesn't exist. *Supra* Section (B).

parties may file motions for reconsideration. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.*

The District sought reconsideration under Rule 54(b). ROA.1938. George hangs his contrary argument on two Rule 59(e)—not 54(b)— cases. George Br. at 13–14 (citations omitted). They're inapposite. In Rule 59(e) cases, the case is over. Not so under Rule 54(b). Rule 54(b) gives courts considerable discretion to manage their dockets before the case becomes final. *Austin*, 864 F.3d at 336. So, the district court's exercise of that discretion wasn't improper.

> **2.      The district court wasn't required to sift through the 13,000-page summary judgment record to find evidence to support George's position.**

George next claims that, in seeking reconsideration, the District "offered nothing at all beyond its earlier briefing." George Br. at 15 (citation omitted). By contrast, he "submitted full summary-judgment evidence, including deposition transcripts, exhibits, and [various other] documents." George Br. at 15 (citation omitted). And because the district

court "refused to consider" his evidence, he says the district court abused its discretion. George Br. at 18. George is mistaken.

For starters, George's statement that the District merely offered its "earlier briefing" is incorrect. The motion cited new evidence disclosed during discovery and not included in the original motion. ROA.1948–51, 5151–62 (collecting deposition testimony). Some of this evidence didn't exist when the District initially moved for summary judgment. And most wasn't cited in the District's pre-discovery motion.

Next, even though George thinks otherwise, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citation omitted). Courts needn't "sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (citation omitted). Indeed, "judges are not like pigs" expected to scour the record for "truffles." *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (citation omitted). And nor are they "ferrets." *Nicholas Acoustics & Specialty Co. v. H&M Constr. Co., Inc.*, 695 F.2d 839, 846–47 (5th Cir. 1983).

George's response attached *the entirety of* the District's document production. ROA.1996, 2021, 2444, 4194, 6545, 10047, 12148, 12805 (initial pages for docket numbers). The exhibits were—and still are—both voluminous and challenging to navigate. George sometimes cited thousands of pages to support a generic proposition, and his citations were only sporadically accurate. ROA.5157–63, 5166–71. His "amended" response suffered from the same defects. ROA.5728–34, 5736–43. George thus failed to carry his burden to raise a genuine issue of material fact.

George counters that the district court "impermissibly shifted the burden of proof as required by Rule 56." George Br. at 17. He also indicts the district court for supposedly "grant[ing] a dispositive motion because it [was] procedurally dissatisfied with the non-movant's briefing" and "refused to allow [him] to correct citation errors." George Br. at 19–20. Neither statement is correct.

He cites two inapposite cases as support. *Johnson v. Pettiford*, 442 F.3d 917, 918–19 (5th Cir. 2006) (reversing dismissal when non-movant failed to respond to motion); *Hibernia v. Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277, 1279–80 (5th Cir. 1985) (reversing grant of unopposed motion for summary judgment). But *Ragas* is more

instructive considering the facts in this case. *Ragas*, 136 F.3d 455, 458;

*see also Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.8 (5th Cir.

2016) (evidence not brought to court's attention, even if present in record,

is "not properly before the district court") (collecting cases).

The district court held the District to its burden. ROA.5173–78

(explaining burden of proof and collecting evidence). Once the District

met its burden, the responsibility to raise a fact issue fell to George.

*Ragas*, 136 F.3d at 458; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.

1994). But he didn't; instead, he fabricated evidence. *Infra* Section (E).

Thus, summary judgment was appropriate. ROA.5178–81.

3.    **Respectfully, the district court should've applied rational basis review.**

This Court has already decided how courts in this Circuit should

review cases challenging hair-length restrictions. Since the Constitution

doesn't create textual rights related to hair length, the district court

should've applied the rational basis test. *Karr v. Schmidt*, 460 F.2d 609,

613 (5th Cir. 1972) (en banc).

28

### a.    The Constitution does not create a "right to wear long hair" in school.

While the Supreme Court "has never chosen to resolve the issue of the constitutionality of regulation of hair length by schools," we "have some strong hints that the … Supreme Court has determined that it will not involve itself in hair-length disputes and that hair-length regulations do not jeopardize constitutional rights." *Bastrop Indep. Sch. Dist. v. Toungate*, 958 S.W.2d 365, 372–73 (Tex. 1997); *Karr v. Schmidt*, 401 U.S. 1201 (1971) (orig. proceeding) (Black, J.) ("The only thing about it that borders on the serious to me is the idea that anyone should think the Federal Constitution imposes on the United States courts the burden of supervising the length of hair that public school students should wear.").

In *Karr*, the Court was "called upon to decide [whether] there [is] a constitutionally protected right to wear one's hair in a public high school in the length and style that suits the wearer[.]" *Karr*, 460 F.2d at 613. The answer? "[N]o such right is to be found within the plain meaning of the Constitution." *Id.* Hair-length restrictions are "invalid under the Equal Protection clause only if th[e] court can perceive no rational basis on which it is founded." *Id.* at 615–16. Considering "the interference with liberty is a temporary and relatively inconsequential one," courts are

29

"compelled to recognize and give weight to the very strong policy considerations in favor of giving local school boards the widest possible latitude in the management of school affairs." *Id.* at 615, 617–18 (creating "per se rule that [hair-length] regulations are constitutionally valid" and directing district courts "to grant an immediate motion to dismiss").

Here, the district court declined to apply *Karr*. ROA.1181. Instead, the court applied intermediate scrutiny and found the District cleared it. ROA.1658–61. While the Restriction survives either standard of review, the district court applied the wrong rule and erred in two respects.

*First*, except for free-exercise issues not present here, hair-length rule disputes don't implicate constitutional rights. *Karr*, 460 F.2d at 613; *Fenceroy v. Morehouse Par. Sch. Bd.*, 2006 WL 39255, at *4 (W.D. La. Jan. 6, 2006) (holding *Karr* and its progeny "stand for the proposition that grooming regulations at the high school level do not deprive the plaintiffs of any constitutionally recognized rights in the first place") (citation omitted).

*Second*, *Karr* remains viable. The district court correctly notes *Karr* was decided in 1972, when "determining whether to treat sex as a quasi-suspect class was in flux." ROA.1182. But the conclusion that *Karr* is bad

law doesn't follow. Subsequent cases confirm its vitality. *Domico v. Rapides Par. Sch. Bd.*, 675 F.2d 100, 102 (5th Cir. 1982) (noting *Karr*'s "bright line" rule); *Davenport v. Randolph Cnty. Bd. of Educ.*, 730 F.2d 1395, 1397 n.3 (11th Cir. 1984) (upholding "clean shaven" policy in high school athletic program). *Domico* post-dates *Craig v. Boren*, 423 U.S. 1047 (1976), the case establishing gender as a quasi-suspect class, by six years. If *Karr* was overruled by *Craig*, the *Domico* court would've said so.

Over a decade later, the Texas Supreme Court considered the issue twice—both times relying on *Karr*, and both times concluding that the student's "claims do not manifest such an affront to his constitutional rights" as to warrant intervention. *Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995); *Toungate*, 958 S.W.2d at 372–73. Again, if *Karr* was bad law, *Barber* and *Toungate* would've said so.

Elected school boards prescribe student conduct. This principle was true in the 1970s, and it's true now—especially for hair-length rules. *Toungate*, 958 S.W.2d at 372–73. The issues at stake in hair-length cases simply don't implicate the Constitution. *Karr*, 401 U.S. at 1203. While hair length may be important to George, the federal judiciary has many tasks to attend to; challenges to hair-length rules aren't one of them. *Id.*

### b.　This issue involves a circuit split.

*Karr* wasn't equivocal, but this Circuit's courts remain inconsistent about the appropriate standard of review in hair-length cases. *Compare,* ROA.1181–82 (intermediate scrutiny), *with Fenceroy*, 2006 WL 39255, at *4 (rational basis). Similarly, the level of scrutiny in dress code cases remains an open question across the country. Jillian R. Friedmann, *A Girl's Right to Bear Arms: An Equal Protection Analysis of Public School Dress Codes*, 60 B.C. L. Rev. 2247, 2258 (2019) (recognizing circuit split). Four of this Court's sister circuits conclude hair-length rules don't implicate constitutional rights or warrant rational basis review. Most of them post-date *Karr*—one by more than a decade.[4] Relatedly, every state in this Circuit applies the rational basis test in these circumstances.[5]

There are ongoing lawsuits across this Circuit on hair-length rules in public schools. The district courts and thousands of school districts in

---

[4] *Davenport*, 730 F.2d at 1397 n.3; *Zeller v. Donegal Sch. Dist. Bd. of Educ.*, 517 F.2d 600, 605–06 (3d Cir. 1975); *Fagan v. Nat'l Cash Register Co.*, 481 F.2d 1115, 1117–19 (D.C. Cir. 1973); *King v. Saddleback Jr. Coll. Dist.*, 445 F.2d 932, 939 (9th Cir. 1971).

[5] *Toungate*, 958 S.W.2d at 372–73; *Shows v. Freeman*, 230 So. 2d 63, 64 (Miss. 1969); *Humphries v. Lincoln Par. Sch. Bd.*, 467 So. 2d 870, 872 (La. App. 2nd Cir. 1985).

this Circuit will benefit from clarity as to their legal responsibilities in this arena.

* * *

This Court is bound to apply *Karr*. The en banc Court could only overrule *Karr* if a student's right to wear his or her hair at a particular length was a fundamental right "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 231 (2022) (citation omitted). That burden cannot be met; hair-length restrictions have been the norm for decades, perhaps centuries. *Karr*, 460 F.2d at 613.

Doubtless, students don't "shed their constitutional rights … at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). But just as surely, minors have fewer rights than adults. *Veronia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 655–56 (1995); *Barber*, 901 S.W.2d at 451 (citation omitted). Minors aren't entitled to rights uniformly denied to adults. *Infra* note 7.

4.    **Even under intermediate scrutiny, the district court correctly concluded the District carried its burden with respect to George's Equal Protection sex-discrimination claim.**

Society has long recognized that men and women aren't identical. And in that vein, courts have steadfastly rejected attempts to "erase all outside physical distinctions between the sexes" and "stereotyp[e] both sexes into one." *Trent v. Perritt*, 391 F. Supp. 171, 173 (S.D. Miss. 1975). This principle holds true today. 90 Fed. Reg. 8615, 8615 (2025) (defining "sex" as "an individual's immutable biological classification as either male or female").

At the same time, most sex-based distinctions are reviewable under intermediate scrutiny, in a two-pronged analysis:

- *First*, the court must determine whether the government's stated goals qualify as important or substantial. *Miss. Univ. for Women v. Hogan*, 458 U.S. 718, 725 (1982).

- *Second*, the government must show its policy is "substantially related to the achievement" of its stated interests. *United States v. Virginia*, 518 U.S. 515, 532–33 (1996).

If intermediate scrutiny applies here, the District satisfies both prongs.

> a.    Reflecting community expectations, ensuring student success, and advancing career readiness are important governmental interests.

The first prong of the intermediate scrutiny test considers whether the government has identified important or substantial goals. *Hogan*, 458 U.S. at 725. At this stage, the Court considers if "the government's stated goals qualify as important or substantial." *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435 (9th Cir. 2008) (citation omitted).

George speculates that the Restriction is based only on "stereotype or tradition." George Br. at 22. That's incorrect. Rather, the Restriction advances three governmental interests:

- reflecting community expectations;

- ensuring student success; and

- advancing career readiness.

ROA.1306.

As a matter of law, these objectives are important. *See, e.g.*, *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001) ("Improving the educational process is undoubtedly an important interest."); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 286 (5th Cir. 2001) (same); *Jacobs*, 526 F.3d at 435 (student achievement, safety, and positive school

35

environment are important) (citation omitted); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391–92 (6th Cir. 2005). "Indeed, it is hard to think of a government interest more important than the interest in fostering conducive learning environments for our nation's children." *Jacobs*, 526 F.3d at 435–36.

A district court case in this Circuit, *Woodley*, is analogous. There, a school employed a hair-length restriction nearly identical to the one at issue here. *Woodley v. Tatum Indep. Sch. Dist.*, No. 21-CV-00364, Dkt. 119 at 17 (E.D. Tex. Oct. 13, 2023); ROA.1397–98. The school justified the rule based on the same goals advanced by the District—"(1) community expectations; (2) student success; and (3) career readiness." ROA.1397–98. The district court held the hair-length rule "serve[d] important interests and withst[ood] intermediate scrutiny" as a matter of law. ROA.1397–98 (citation omitted).

The district court found *Canady*, *Jacobs*, and *Blau* to be instructive. ROA.5175. Those cases held, in similar circumstances, that the District's stated goals were important as a matter of law. Yet George ignores all of them. Ignoring the district court's reasoning works a forfeiture. *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 751 (5th Cir. 2023).

36

Regardless, the cases cited above and relied on by the district court aren't outliers. This Court has previously acknowledged the important purposes hair-length restrictions serve. *Karr*, 460 F.2d at 615; *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 703 (5th Cir. 1968) (acknowledging a compelling interest "in maintaining an effective and efficient school system" with a hair-length restriction). And so have other courts in this Circuit. *Fenceroy*, 2006 WL 39255, at *4 (acknowledging governmental interests in "the need for discipline, the need to avoid disruptions and distractions in classrooms, the need to foster respect for authority, and the need to encourage conformation to community standards"). George's reliance on out-of-circuit cases saying otherwise are unavailing. George Br. at 25 (citations omitted).

The goals advanced by the District have survived intermediate scrutiny in cases other than those relied upon by the district court. *E.g.*, *Jones ex rel. Cooper v. W.T. Henning Elem. Sch. Principal*, 721 So. 2d 530, 532 (La. App. 3rd Cir. 1998) (community expectations, discipline, and student success); *Hines v. Caston Sch. Corp.*, 651 N.E.2d 330, 335 (Ind. App. 1995) (noting school's interest in requiring students "to reflect

37

its values," "instill discipline," and improve "educational environment" via a dress code).

George indicts community expectations as unimportant. He reads *Hayden*, a Seventh Circuit case, to say "community expectations" aren't a viable government interest. George Br. at 39–40 (citing 743 F.3d at 581). Not so. *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 581 (7th Cir. 2014) ("sex-differentiated standards consistent with community norms may be permissible"). Even if *Hayden* accurately states the law in this Circuit, the SCOC imposes comparable burdens on male and female students. ROA.1371–73.

Community expectations, student success, and career readiness "unquestionably qualify as important"—even George doesn't controvert the latter two. *Jacobs*, 526 F.3d at 435. As such, the District turns to the second prong of the intermediate scrutiny test.

### b.     The Restriction is substantially related to advancing the stated important governmental interests.

Under the second prong, a governmental body must explain how its policy is "substantially related" to achieving its goals. *Virginia*, 518 U.S. at 532–33. But the Supreme Court's "gender-based classification equal protection cases [don't] require[] that the [rule] under consideration must

38

be capable of achieving its ultimate objective in every instance." *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001).

The second prong requires "a 'fit' between the [government's] ends and the means chosen to accomplish those ends." *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016) ("All that is required is 'a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served.'") (citation omitted). Intermediate scrutiny doesn't demand narrow tailoring and even "less direct nexus[es]" can be "still substantially related" to important goals. *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 133–34 (2d Cir. 2014) (upholding mass media reporting requirements in state election laws).

Of course, exceedingly tenuous connections between goals and sex-differentiating rules won't survive. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 201–02, 204 (1976) (statute prohibiting "only the selling of 3.2% beer to young males and not their drinking the beverage once acquired" didn't survive intermediate scrutiny). But by contrast, a rule that substantially

39

relates to an important goal, even if it's not always realized, will withstand scrutiny. *Nguyen*, 533 U.S. at 70.

First Amendment cases often apply intermediate scrutiny, and two are instructive here. *First*, consider *Canady v. Bossier Par. Sch. Bd.*, 240 F.3d 437 (5th Cir. 2001). There, the school found mandatory uniforms were conducive to an effective learning environment. *Id.* at 438–39. Acknowledging the school's goals to "increase test scores and reduce disciplinary problems" were important, the school met the first prong. *Id.* at 443. The school offered affidavits to confirm the rule accomplished those goals. *Id.* The plaintiff-students "offered no affidavits that raise[d] a fact issue." *Id.* at 443. The district court granted summary judgment, and this Court affirmed. *Id.* at 443–44. In concluding its analysis, this Court reiterated that "it is not the job of federal courts to determine the most effective way to educate our nation's youth." *Id.*

*Second*, the analysis in *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001), is likewise helpful. There, the court considered a mandatory uniform policy like *Canady*. *Id.* at 279. The school identified "improving the educational process" as the governmental interest and, citing *Canady*, the court agreed that it was "undoubtedly an important

and substantial interest of … the school board." *Id.* at 286 (citation omitted). In response, the students "argue[d] that [the school] failed to produce evidence of any need to further these improvements." *Id.* That is, the students didn't believe the problems were real. *Id.* This Court held that the school's findings regarding the reasons for its stated purposes weren't for the courts to question. *Id.* at 286–87 & n.16. "As has been well recognized, federal courts should defer to school boards to decide, within constitutional bounds, what constitutes appropriate behavior and dress in public schools." *Id.* at 287.

Here, the District offered the following evidence to explain how the Restriction relates to its stated goals:

## Community Standards

- Minutes from Board meetings can confirm that these topics have been discussed during the public comment segment of board meetings. ROA.1961.

- Several years ago, the District formed a Parent Advisory Dress Code Committee to ascertain if the Restriction remained consistent with community expectations. In its final, unanimous recommendation, the PADC advised the Board that "it should not change the hair length requirements in the dress and grooming code" and confirmed that it still accurately reflected community expectations. ROA.1974; *see also* ROA.1861–70, 1878–81 (interrogatory answers). The PADC specifically wrote that "[s]tudents appear more

41

professional when groomed in accordance with the policy." ROA.1974.

- In an affidavit, Poole testified that "the [D]istrict determines community expectations by hearing public comment at board meetings, taking feedback from the [D]istrict's administration, and drawing on trustees' experiences as community members." ROA.5176 n.2 (citing ROA.1306). "Student appearance, as prescribed by the grooming policy, is a 'point of pride in the community.'" ROA.5176 n.2 (citing ROA.1306). *See also* ROA.2312 (in deposition testimony, Poole testified people flock to the District because of its community standards).

- Poole's perspective aligns with Skinner's. *E.g.*, ROA.2035–36 (Skinner discussing goal of PADC to "poll the community and give us a feel for the community's expectation[s]"), 2043–46, 2049 (Skinner noting community's desire for the Restriction).

## Student Success

- The District is rated an "A" by the TEA now and has been for many years. Tex. Educ. Agency, *Barbers Hill ISD: Accountability Overview*, https://perma.cc/HQ9A-C85Z (last visited Feb. 2, 2026). The District credits its community values, including the Restriction, for its student successes. *See* ROA.1306, 2311–12.

- The District has studied the relationship between dress and grooming codes and hair-length restrictions and student success. ROA.1861–70, 1878–81 (interrogatory answers). For instance, Dr. Christine Bruton "examined dress and grooming policies at 1,400 high schools across Texas" and identified likely connections between a school district's standard of dress and a higher TEA rating, lower disciplinary infractions, and lower dropout rates. ROA.1976, 1981. In her report and subsequent presentation to the Board from several years ago, Dr. Bruton explained, "[i]f you have a standard of dress like [the District], you are more likely to receive an A or B rating

42

by the TEA." ROA.1976. "You are less likely to have significant safety-related issues." ROA.1977. Dr. Bruton also explained that, "[o]ver a period of two years, 79% of high school dropouts came from schools with no hair policy." ROA.1977. By contrast, "every failing school in Texas" doesn't have a hair-length policy like the District's. ROA.1977.

- The PADC agreed. In its final recommendation, the PADC wrote the Restriction "establishes the tone for a successful educational atmosphere" and "provides consistency for students as they matriculate through K-12." ROA.1974. It further elaborated that the Restriction "supports the premise that there is a time and place for everything." ROA.1974. Lastly, the PADC wrote that "[r]ules on dress and grooming help to instill student discipline." ROA.1974.

- Poole testified that "[D]istrict students 'learn respect and structure' by following the grooming policy and that it provides 'consistency for all students throughout their time in [school]' and 'instill[s] discipline as it teaches students the value of following rules as they become young adults.'" ROA.5176 n.3 (citing ROA.1306); ROA.2311–12 (discussing District's accomplishments and testifying "[w]hen you have a winning recipe, you don't meddle with the ingredients").

- Skinner shared Poole's perspective. *E.g.*, ROA.2038, 2043 (Skinner testifying that "our policy of behavior reinforcement has worked"), 2046–47 ("There is a structured environment where students [do] not" cause classroom disruptions), 2048. Indeed, the District is "leaps and bounds above other school districts" and "graduated 100 percent of [its] seniors." ROA.2040. While there may not be "any one thing" guaranteeing student success, the Restriction is an ingredient in the District's successful recipe. ROA.2040.

43

## Career Readiness

- The TEA recognizes the District for its successes in "prepar[ing] [its] students for success after high school in college, the workforce, or the military." Tex. Educ. Agency, *Barbers Hill ISD: Accountability Overview*, https://perma.cc/HQ9A-C85Z (last visited Feb. 2, 2026). The District credits its community values, including the Restriction, for its successes in career readiness.

- District students enlist in the military. All men must enroll in the Selective Service on their eighteenth birthday. 50 U.S.C. § 3802(a); *Rostker v. Goldberg*, 453 U.S. 57, 72–73 (1981). All military branches impose hair-length restrictions for male enlistees and officers, even though the same restrictions don't apply to their female counterparts.[6] The military is predominantly male, and only men are potentially required to serve. 50 U.S.C. § 3802(a); Tara A. Osbourne, *Behind the Uniform: Service Members & Impaired Driving*, 64 No. 1 Judges' J. 28, 28 (2025) ("As of August 2024, 17.9 percent of service members on active duty are women and 82.1 percent are men."). The District should prepare its male students, who are statistically more likely to participate in military service than their female peers, and who may, also unlike their female peers, be compelled to serve under the Selective

---

[6] U.S. Army, *Wear and Appearance of Army Uniforms and Insignia*, Army Reg. 670-1, at 6–12 (Jan. 2021), https://perma.cc/VW7B-S6YH; U.S. Marine Corps, *Marine Corps Uniform Regulations*, MCO 1020.34H, at 1-11–1-17 (May 2018), https://perma.cc/QLU5-Q6VK; U.S. Navy, *Navy Uniform Regulations*, Art. 2201.1, at 1–5, https://perma.cc/JW6M-MHHZ (last visited Feb. 2, 2026); U.S. Air Force, *Dress and Personal Appearance of Department of the Air Force Personnel*, Instruction 36-2903, at 18–25 (Feb. 2025), https://perma.cc/8XYD-ME9M; Sec. of the Air Force Pub. Affs., *DAF publishes revised dress, personal appearance instruction* (Feb. 29, 2024), https://perma.cc/TWM6-P6FF; U.S. Coast Guard, *Uniform Regulations*, Commandant Instruction M1020.6K, at 2-9–2-15 (July 2020), https://perma.cc/QY9YWYQN.

Service laws and be subject to the military's dress and grooming codes.

- Any employer in the country can legally impose a hair-length restriction. *Willingham v. Macon Telegraph Pub. Co.*, 507 F.2d 1084 (5th Cir. 1975) (en banc). Indeed, the "unanimous conclu[sion] that different appearance standards for male and female employees" are legal even led the EEOC to stop pursuing those claims. Equal Emp. Opp. Comm'n, *CM-619 Grooming Standards* (1989), https://perma.cc/6H78-Q348. That some employers *don't currently* do so doesn't mean they *can't* in the future. *See id.* The opposite is true. *Texas v. Equal Emp. Opp. Comm'n*, 2022 WL 22869778, at *1–14 (N.D. Tex. May 26, 2022) (upholding employer dress code). In short, it's legal for employers to differentiate based on sex in their dress codes. The Restriction prepares District students for the reality that employers can (and do) impose "different appearance standards for male and female employees." Equal Emp. Opp. Comm'n, *supra*.

- The PADC agreed. "When graduates seek employment opportunities in the public and private sectors[,] they are perceived based on their dress and appearance by hiring managers. Maintaining a hairstyle in accordance with the district's dress code policy will aid in maximizing career outcomes." ROA.1974.

- Dr. Poole testified that the Restriction "helps 'prepare male students specifically for success in the workplace' by teaching 'grooming standards and rules [they] very well may encounter in a [post-graduate] professional setting,'" and explained that "the 'largest employers of District students in the area' are chemical plants, refineries, police and fire departments, and the U.S. military—all of which impose different hair-length

restrictions on men and women." ROA.5177 n.5 (citing ROA.1306); *see also* ROA.2312–13 (noting District students are "courteous, respectful, … discipline[d], [and have] very good work ethic," and that the Restriction is a part of the formula improving career prospects for students).

- Again, Skinner shared Poole's perspective. *E.g.*, ROA.2039 (Skinner explaining the Board is "just trying to prepare our students for the expected norms that they're going to see when they get out of school"), 2040 ("we want our kids to be prepared to … tackle the world"), 2046 ("Learning to abide by a set of rules prepares students for the adversities that they will see on the job site … , and in the military.").

There's more than enough evidence to warrant summary judgment. *Canady* and *Littlefield*, both intermediate scrutiny cases decided at summary judgment, confirm that affirmance is appropriate. Like the school in *Canady*, the District produced evidence explaining how the Restriction substantially relates to the stated goals. George says the connection is too tenuous, George Br. at 39–40 (citations omitted), but *Littlefield* confirms otherwise. 268 F.3d at 286–87 & n.16; *see also Littlefield v. Forney Indep. Sch. Dist.*, 108 F. Supp. 2d 681, 694 (N.D. Tex. 2000) ("Moreover, whether the decision to implement school uniforms is the best or worst method of achieving that goal is not subject to review by the Court.") (collecting cases).

46

George also makes much about a lack of "studies" and "statistics." George Br. at 38. To be clear, the law requires neither. *Craig*, 429 U.S. at 200–02 (rejecting reliance on statistical evidence). And in any event, the District has both. ROA.1974 (PADC recommendation), 1976–81 (Bruton report and presentation). Trying to prove the District's evidence isn't sufficient, George cites a district court case. George Br. at 37–38 (citing *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 523–25 (S.D. Tex. 2020)). But *Arnold*, which was decided on a limited preliminary injunction record, isn't persuasive here. *See Mylett v. Jeane*, 910 F.2d 296, 299 (5th Cir. 1990) (citation omitted) (preliminary injunction finding is "not binding at trial on the merits"). Although George seems to believe otherwise, *Arnold* doesn't address any of the studies or statistics the District cited in its renewed motion for summary judgment. 479 F. Supp. at 523–25 (not discussing Bruton report, PADC recommendation, or the District's other evidence).

Moreover, *Littlefield* again undermines George's contention, as the school district there justified its policy without statistical evidence and cleared intermediate scrutiny without issue. 268 F.3d at 286 & n.16 (policy included findings and school district compared its policy to other

schools' policies). As the evidence above demonstrates, the District has a stronger argument than the school in *Littlefield*. The connection between the stated goals and the Restriction easily passes muster.[7]

\* \* \*

The mild burden students face at school is substantially related to important governmental interests. If the District isn't able to enforce the Restriction, its ability to maintain community standards, ensure student success, and prepare its students for life after high school would be stymied. Whether sex-differentiated hair-length restrictions in employer or military dress codes are good or bad is irrelevant. The reality is that they exist. When he was in high school, George might've found that fact unfair, frustrating, or both. But the District is tasked with preparing its students for life beyond high school, and it should be permitted to fulfill its educational mandate. *See* Tex. Educ. Code §§ 28.008, 28.016.

The court properly dismissed George's sex-discrimination claim.

---

[7] As one final point, the District Parties note that students can't be entitled to rights uniformly denied to adults. *See Tinker*, 393 U.S. at 506–07. "A proper educational environment requires close supervision of schoolchildren, as well as the enforcement of rules against conduct that would be perfectly permissible" for adults. *Vernonia Sch. Dist. 47J*, 515 U.S. at 655. For that reason, schools have "the power and indeed the duty to inculcate the habits and manners of civility." *Id.* The Restriction is just one example of the District applying this principle.

48

5.    **George's arguments about the CROWN Act miss the mark, as the CROWN Act doesn't apply, waive the District's immunity, or create a private cause of action.**

The CROWN Act states that "[a]ny student dress or grooming policy adopted by a school district, including a student dress or grooming policy for any extracurricular activity, may not discriminate against a hair texture or protective hairstyle commonly or historically associated with race." Tex. Educ. Code § 25.902(b). "Protective hairstyle," in turn, means "braids, loc[]s, and twists." *Id.* § 25.902(a). George says the Restriction violates the CROWN Act and that he has a right to sue the District under § 1983 to vindicate his rights. George Br. at 42–47. His arguments fail thrice over.

*First*, the Restriction aligns with the CROWN Act. Start with the text; when interpreting a statute, "[p]lain meaning is always the start." *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023). The "inquiry … ends there as well if the text is unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). Under this supremacy-of-text principle, "the ordinary meaning of [the] language" used by a legislative body "express[es] its legislative purpose." *Engine Mfrs. Ass'n v. S. Coast Air Quality Mgmt. Dist.*, 541 U.S. 246, 252 (2004) (citation omitted).

49

The statute applies to "hair texture" and "protective hairstyle[s]." Tex. Educ. Code § 25.902. It says nothing about hair length. *Id.* And those are different concepts. The Restriction does not prohibit any hairstyle, including locs, braids, or twists. ROA.1372. Students remain free to have locs and other protective styles, so long as they comply with the hair-length rules. ROA.1372. In other words, the policy regulates how long hair may be—not how it may be styled. ROA.1372. So, the Restriction aligns with the CROWN Act.

George disagrees, citing public statements by a few state legislators and a NAACP memorandum. George Br. at 43–44. To start, legislative history is extraneous when the statute is clear. *Moore*, 71 F.4th at 395. And in Texas, legislative history is particularly disfavored. *Tex. Health Presbyterian Hosp. of Denton v. D.A.*, 569 S.W.3d 126, 136 (Tex. 2018) ("[W]e do not consider legislative history or other extrinsic aides to interpret an unambiguous statute because the statute's plain language most reliably reveals the legislature's intent.").

The NAACP is an advocacy organization that seeks outcomes for its members; its legal analysis is neither impartial nor persuasive. And the public statements are unhelpful, too. One can't rely on a few members to

50

divine the intent of the whole legislative body; after all, "what motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it." *Dobbs*, 597 U.S. at 253–54 (citation omitted); *D.A.*, 569 S.W.3d at 136 ("statements explaining *an individual legislator's* intent cannot reliably describe *the legislature's* intent").

*Second*, the CROWN Act doesn't create a private cause of action. Tex. Educ. Code § 25.902. Evidently recognizing that much, George asks the Court to imply one or allow enforcement through § 1983. George Br. at 46. Both arguments fail. "[I]mplied causes of action are disfavored," *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009), and "a private right of action cannot be found to be 'implied' unless the implication both is clear and is based on the text of the statute—not exclusively on its purpose," Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* at 317 (2012). The CROWN Act doesn't create a private cause of action; "there is simply no other way to read the statutory language." *Garland v. Cargill*, 602 U.S. 406, 429 (2024) (Alito, J., concurring). And on the § 1983 front, "[v]iolation of a state statute is not actionable under § 1983." *San Jacinto Sav. & Loan v. Kacal*, 921 F.2d 697, 701 n.4 (5th Cir. 1991).

*Third*, even if the Restriction violated the CROWN Act, immunity would be outcome-determinative here. Governmental immunity shields political subdivisions of the State, including school districts. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). A plaintiff must demonstrate the court's jurisdiction by identifying a clear and unambiguous statutory waiver of immunity. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). He must further plead a violation of the statute and produce evidence for each element of the claim. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 783–86 (Tex. 2018). If the plaintiff fails at any step, immunity remains intact.

George fails at the outset. He can't cite a "clear and unambiguous" waiver of governmental immunity that would allow him to bring a claim directly in federal or state court. The statute must explicitly reference immunity and convey an intent to waive it. *Tooke v. City of Mexia*, 197 S.W.3d 325, 342–43 (Tex. 2006). The CROWN Act doesn't contain such a waiver. Tex. Educ. Code § 25.902.

For all three reasons, George's CROWN Act claim wasn't viable. In light of the foregoing defects, certification to the Texas Supreme Court would only serve to further waste judicial resources. *See* George Br. at

52

41–42 (saying this case "presents a state-law question appropriate for certification").

### 6.    The district court properly dismissed George's Title VI claim.

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C § 2000d. In his brief, George seems to conflate his CROWN Act and Title VI claims. George Br. at 46. Although this issue was likely inadequately briefed, as it fails to address the district court's reasoning for dismissing the claim, the District Parties address Title VI briefly.

A few principles support the district court's decision here. *First*, to receive compensatory damages under Title VI, the plaintiffs must plead conduct indicative of intentional race discrimination—not disparate impact. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). The federal government doesn't even investigate disparate-impact claims under Title VI. 90 Fed. Reg. 57141, 57141 (2025) (citing *Alexander v. Sandoval,* 532 U.S. 275, 280 (2001)).

53

Here, George "pleaded only conclusory allegations and the existence of a facially race-neutral policy." ROA.1194. "In fact, [he] affirmatively pleaded that the District may not have intended to discriminate." ROA.1194 (citation omitted). "This statement negates any assertion of *intentional* race discrimination." ROA.1194. George's failure to address the district court's reasoning or cases is dispositive. *L&A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 & n.27 (5th Cir. 1994) (claim abandoned when argument was one-page long and cited no authority) (citations omitted).

*Second*, caselaw from the analogous Title VII context is instructive on Title VI's contours. *N.Y.C. Env't Just. All. v. Giuliani*, 214 F.3d 65, 69 (2d Cir. 2000). An Eleventh Circuit case is on point. *Equal Emp. Opp. Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018 (11th Cir. 2016). In that case, the EEOC represented "a black job applicant whose offer of employment was rescinded … pursuant to [the employer's] race-neutral grooming policy when she refused to cut off her dreadlocks." *Id.* at 1020. The EEOC said the rescission constituted race discrimination under Title VII. *Id.* On appeal, the Eleventh Circuit surveyed the caselaw and noted the EEOC was mistaken: "As far as we can tell, every court to have

54

considered the issue has rejected the argument that Title VII protects hairstyles culturally associated with race." *Id.* at 1032–33 (citing and analyzing 10 federal cases). So, the analogous Title VII caselaw confirms that Title VI doesn't extend to George's claims in this case.

The district court properly dismissed George's Title VI claim.

### E.    The district court's modest sanctions weren't an abuse of discretion given the serious misconduct at issue: fabricated evidence.

Finally, the sanctions order. While George ostensibly intended to raise sanctions, his brief includes a heading with no discussion:

George Br. at 13 (emphasis added). Setting aside the missing section, George raises the specter of the issue by saying the court dismissed his case based on "citation format[ting]." George Br. at 19, 21, 48–49. The Court could deem this argument waived by inadequate briefing. *L&A Contracting*, 17 F.3d at 113 & n.27 (citations omitted).

In any event, George is wrong. The district court didn't dismiss the case as a sanction. Rather, dismissal was the result of George's failure to raise a fact issue. ROA.5172–78. The court's orders make the distinction abundantly clear. ROA.5172, 5763. The actual sanctions were a public reprimand and three hours of continuing legal education. ROA.5768.

Given the misconduct, the sanctions were lenient. Recall the court originally denied the District's summary-judgment motion. ROA.1914. After discovery closed, the District moved for reconsideration and cited evidence exchanged during discovery as support. ROA.1948–51, 1960–82. The court scheduled a hearing. ROA.1989. Before the hearing, George responded; after the hearing, the district court gave him yet another opportunity to respond. ROA.1990, 1989, 1996, 6515–42.

In his second response, George fabricated evidence. ROA.5157–63, 5166–71. And not just one piece of evidence. ROA.5157–63 (10 pieces of evidence), 5166–71. He fabricated multiple incriminating quotations and falsely attributed them to District witnesses. ROA.5157–63, 5166–71. He cited scores of evidence to support his position that summary judgment was improper. ROA.1996–2015. But just about none of the evidence was real. ROA.5157–63, 5166–71. The "quotations and summaries of witness

testimony [were] inaccurate to the point of fabrication." ROA.5180 (citation omitted). So, the court issued a show-cause order. ROA.5181.

George filed an "amended" response, which he claimed resolved the "transcription" errors giving rise to the fabrications. ROA.5183–693. Yet the problems remained. ROA.5728–34 (identifying four fake quotes), 5736–43 (fact-checking every citation and concluding two were accurate, three were partly accurate, and 25 were inaccurate), 5766 & n.1 (district court fact-checking some of the misquotes). At this point, months after George's counsel could've corrected the errors, the court issued sanctions. ROA.5765–68 (citations omitted).

The District Parties didn't advocate for any particular sanction. But this Court has permitted similar sanctions for less egregious conduct. *Jenkins*, 478 F.3d at 263–66 (sanctions for misquoting witness). Thus, the district court didn't abuse its discretion in issuing sanctions.

## CONCLUSION AND PRAYER

George brands the proceedings unfair. George Br. at 47–49. Not so. If anything, the court gave him more grace than he was due; it afforded George every opportunity to present his case—plus more. ROA.9–21. But he failed at every turn, eventually resorting to "making up facts" to stave

off dismissal. ROA.5181. There were no irregularities, only self-inflicted consequences.

This Court should affirm.

Respectfully submitted,

ROGERS, MORRIS & GROVER, L.L.P.

/s/ Jonathan Griffin Brush

———————————————————————

JONATHAN GRIFFIN BRUSH
State Bar No. 24045576
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
ademmler@rmgllp.com
RICHARD MORRIS
State Bar No. 14497750
rmorris@rmgllp.com
KYLE STONE
State Bar No. 24117100
kstone@rmglp.com
5718 Westheimer Road, Suite 1200
Houston, Texas 77057
Telephone: (713) 960-6000
Facsimile: (713) 960-6025

*Attorneys for the District Parties*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2026, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

I further certify that (1) the required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

I further certify that I will mail the correct number of paper copies of the foregoing document to the Clerk of the Court when requested.

/s/ Jonathan Griffin Brush

Jonathan Griffin Brush
*Attorney for the District Parties*

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(a)(7)(B) and Local Rule 32.3, the undersigned certifies:

1.    This Brief complies with the type-volume limitations of FED. R. APP. P. 32(a)(7)(B)(i) because:

  X this brief contains **11,286** words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f), or

    this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.    This Brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because:

  X this Brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2026 in 14-point Century font in text and 12-point Century font in footnotes, or

    this Brief has been prepared in a monospaced typeface using _____ with _____.

3.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in 5th Cir. R. 32(a)(7)(B)(i) may result in the Court's striking the Brief and imposing sanctions against the person signing the Brief.

/s/ Jonathan Griffin Brush

_____

Jonathan Griffin Brush
*Attorney for the District Parties*

61